[No. B176666. Second Dist., Div. Eight. Aug. 15, 2005.]

SEARS, ROEBUCK AND CO., Plaintiff and Respondent, v.
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,
Defendant.
GEOFFREY MOUSSEAU, Objector and Appellant.

1344

**COUNSEL**

Mousseau & Associates and Geoffrey C. Mousseau for Objector and Appellant.

Harrington, Foxx, Dubrow & Canter, David H. Canter; Covington & Burling, William F. Greaney, Patricia A. Barald and Allan B. Moore for Plaintiff and Respondent.

## OPINION

**RUBIN, J.**—Geoffrey Mousseau appeals from two orders awarding combined discovery sanctions of more than $20,000 to Sears, Roebuck and Co. based on Mousseau's refusal to comply with deposition and document production subpoenas. Mousseau also appeals from an order rejecting his peremptory challenge to the discovery referee who considered the first of the two sanctions motions and recommended that the trial court impose sanctions. (Code Civ. Proc., § 170.6.) For the reasons set forth below, we dismiss the appeal as to the second sanctions motion and the peremptory challenge issue, and affirm the first sanctions award.

### FACTS AND PROCEDURAL HISTORY

Sears, Roebuck and Co. sued for bad faith when its insurer—National Union Fire Insurance Company of Pittsburgh—refused to pay Sears's claim for the theft of $20 million from Sears by Focus Media, Inc., an advertising agency that Sears had once hired. Lawyer Geoffrey Mousseau represented some of Focus Media's principals, nonparty witnesses who had been subpoenaed as part of Sears's discovery efforts. Evidence developed during discovery led Sears to believe that Mousseau had helped National Union develop a defense to Sears's insurance claim. In order to learn more about Mousseau's conduct, Sears's lawyers served him with five subpoenas, some directing him to turn over numerous documents on September 20, 2003, and some directing him to appear for deposition and produce the same documents on September 29, 2003.

On November 26, 2003, Sears filed a motion to compel discovery, along with a request for monetary and contempt sanctions, contending that Mousseau had not complied with the various subpoenas. That motion was filed with retired Chief Justice Malcolm Lucas, who had been appointed discovery referee for all purposes in Sears's action against National Union.

Mousseau's first response was a peremptory challenge to Chief Justice Lucas, stating that Lucas was biased against him. (Code Civ. Proc., § 170.6, subd. (a)(2).)[1] Sears objected that Mousseau's challenge was filed too late and that, as a nonparty, he lacked standing to challenge the referee. Mousseau replied that once Sears sought contempt sanctions, he became a party to that new, special proceeding, which vested him with the right to challenge Lucas.

Mousseau's later opposition to the merits of the discovery motion was based on a typographical error in Sears's document production subpoenas:

---

[1] All further section references are to the Code of Civil Procedure.

although those subpoenas directed Mousseau to produce the requested documents at the address of Sears's lawyers, they also directed him to produce the documents to the deposition officer, then mistakenly identified *Mousseau* as the deposition officer. According to Mousseau, he fully complied with the document subpoenas because, in accordance with their instructions, he delivered the specified documents to himself. Mousseau contended that Sears's motion was aimed at only the document production subpoenas, not the deposition subpoena. Mousseau contended, however, that Sears cancelled the deposition when a proposed deal calling for Mousseau's advance production of the requested documents fell through.

Declarations and correspondence submitted in Sears's moving and reply papers told a different story. When synthesized, they show Sears's lawyers trying to pin down Mousseau regarding whether he would appear for the September 29 deposition as scheduled, with the lawyers agreeing to Mousseau's alternate date of October 1, 2003, as well. Sears's evidence showed that the deposition was cancelled in order to avoid unnecessary costs only because Mousseau refused to confirm whether he would attend. They also show frantic attempts to contact Mousseau and ask why he missed the September 20 document production deadline. During phone conversations with one of Sears's lawyers during the week of September 22, 2003, Mousseau acknowledged his failure to produce the documents on time and promised to deliver them by courier on September 26. He did not. On October 2, 2003, Mousseau faxed to Sears's lawyers a letter dated September 25 stating that he had complied with the document subpoenas by producing the documents to himself. In response to an October 17 letter from Sears's lawyers that recounted these events, Mousseau sent a fax on November 6 that stated: "Your letter . . . requested my assistance. I presumed my silence would have spoken sufficiently loudly to you. Since you did not get the message, let me be more clear: I decline." The faxed letter restated Mousseau's insistence that he had complied with the document subpoenas and that Sears had cancelled his deposition due to a scheduling conflict. At no time before October 2 did Mousseau express any doubts about his obligations under the document production subpoenas.

On January 6, 2004, Chief Justice Lucas found that because Mousseau was present when Lucas was first appointed the discovery referee, and had appeared before him on behalf of nonparty witnesses several times since then, Mousseau's peremptory challenge was brought too late. (§ 639, subd. (b)(A) [peremptory challenge to all-purpose discovery referee must be made within 10 days of the appointment or 10 days after the objecting party first appears before the referee].) Chief Justice Lucas also found that because Mousseau was not a party to the action, he had no standing to bring a peremptory challenge. As for Sears's sanctions motion, Chief Justice Lucas found that Mousseau's contention that he complied with the subpoenas by producing the

requested documents to himself was not made in good faith. Based on these findings, Lucas recommended that the trial court deny Mousseau's peremptory challenge and award Sears monetary sanctions of $12,472.60.[2] The referee also recommended that Mousseau be ordered to comply fully with the document production subpoenas and make himself available for deposition. He did not, however, recommend contempt sanctions.

In response to the referee's report, Mousseau filed with the trial court written objections that essentially mirrored his earlier positions in regard to his peremptory challenge and his opposition to Sears's sanctions motion. Sears filed an opposition brief that also included a request for more sanctions based on the need to respond to Mousseau's continued reliance on legal arguments Sears considered frivolous. On March 5, 2004, the trial court adopted the referee's recommendations and awarded Sears sanctions of $12,472.60. On March 29, 2004, Mousseau appealed from that order and the denial of his peremptory challenge to Chief Justice Lucas. On April 8, 2004, the court granted Sears's second sanctions motion and awarded further sanctions of $9,646 against Mousseau. On appeal, Mousseau contends that his peremptory challenge was both proper and timely, and that the court erred by granting Sears's two sanctions motions.

## DISCUSSION

1. *The Peremptory Challenge Portion of the Appeal Must Be Dismissed*

■ A peremptory challenge to a judge, commissioner or referee may be filed by a party or a party's lawyer. (§ 170.6, subd. (a)(1).) The challenge must be accompanied by an affidavit stating, in essence, that the party or lawyer believes the judge is prejudiced against him. (§ 170.6, subd. (a)(5).) When the challenge is made to an all-purpose discovery referee, it must be made within 10 days of the referee's appointment, or 10 days after the party first appears before the referee. (§ 639, subd. (b)(A).) A ruling regarding "the disqualification of a judge is not an appealable order and may be reviewed only by a writ of mandate from the appropriate court of appeal sought within 10 days of notice to the parties of the decision . . . ." (§ 170.3, subd. (d).)

■ Writ review is the exclusive avenue of appellate review for such rulings. The fundamental public policy underlying the rule is twofold: First, it promotes judicial economy by eliminating the waste of time and money that might result if litigation were allowed to continue, only to be vacated

---

[2] Shortly after Sears filed its sanctions motion, Mousseau purported to comply by producing certain documents. Sears complained that the response was grossly insufficient, and Chief Justice Lucas agreed. On appeal, Mousseau does not contend that the documents he produced met his obligations under the various subpoenas.

later on appeal because the later rulings and judgment were declared void by virtue of a wrongly-denied disqualification motion. Second, it prevents a party from obtaining a windfall by waiting for the outcome of litigation, then challenging a disqualification only if the result were unfavorable. Therefore, section 170.3, subdivision (d) promotes fundamental fairness by ensuring that the parties receive a speedy appellate determination by way of writ of mandate. (*People v. Hull* (1991) 1 Cal.4th 266, 270–273 [2 Cal.Rptr.2d 526, 820 P.2d 1036].)

■ Instead of following this procedure, however, Mousseau filed a notice of appeal as to both the sanctions order and his peremptory challenge.[3] Although we have discretion to treat Mousseau's appeal as a writ of mandate, that discretion should be exercised only in extraordinary circumstances. (*Mid-Wilshire Associates v. O'Leary* (1992) 7 Cal.App.4th 1450, 1455 [9 Cal.Rptr.2d 862].) Those circumstances are not present here. First, in response to Sears's contention that he was obligated to seek writ relief, Mousseau has not asked us to treat his appeal as a writ. (*Ibid.*) ■ Instead, he contends that because section 170.3, subdivision (d) refers to questions concerning "the disqualification of a judge," and does not mention referees, the statute does not apply here. In making this contention, he has overlooked section 170.5, subdivision (a), which states that the term "judge" when used in sections 170 through 170.5 includes commissioners and referees. Second, Sears does not agree that writ relief is proper and, in fact, asks us to dismiss that portion of Mousseau's appeal. (*H.D. Arnaiz, Ltd. v. County of San Joaquin* (2002) 96 Cal.App.4th 1357, 1367 [118 Cal.Rptr.2d 71].) Third, Mousseau's obligation to seek writ relief was clear. (*Ibid*; §§ 170.3, subd. (d), 170.5, subd. (a).) Finally, as a result of Mousseau's failure to seek writ relief, further proceedings were held and a final resolution has been long delayed, thereby defeating the policy of judicial economy. On this record, we decline to exercise our discretion to treat the appeal as a writ petition and therefore dismiss that portion of the appeal contesting the denial of Mousseau's section 170.6 challenge.[4] (*Mid-Wilshire Associates v. O'Leary,*

---

[3] Mousseau's notice of appeal was filed 10 days after service of notice of the trial court's ruling.

[4] Even though we do not reach the merits of Mousseau's peremptory challenge, we feel it important to note our concerns on the issue. As a nonparty, it is correct that Mousseau ordinarily possessed no rights under section 170.6. (*Avelar v. Superior Court* (1992) 7 Cal.App.4th 1270, 1277 [9 Cal.Rptr.2d 536].) However, as the same decision points out, one who is not a party to pending litigation, but is cited for contempt, may bring such a challenge. (*Id.* at p. 1279, fn. 9.) We have no problem with preventing nonparties and their lawyers from peremptorily challenging bench officers presiding over ongoing litigation when those nonparties are brought in as witnesses or seek relief from discovery procedures aimed at them. Nor do we believe that a nonparty witness could challenge a judge or discovery referee simply because a party sought monetary sanctions against that witness for discovery abuse. We are, however, troubled by the notion that a nonparty could never obtain that right if contempt proceedings were initiated against him for conduct occurring during ongoing litigation.

*supra,* 7 Cal.App.4th at pp. 1455–1456 [appeal dismissed after refusing to treat as writ a purported appeal of a matter that should have been brought up for review by a writ petition].)

### 2. *Substantial Evidence Supports the First Sanctions Award*

█ Discovery from nonparties is governed by section 2020, and is primarily carried out by way of subpoena. (§ 2020, subd. (a).) A nonparty deponent who violates a subpoena may be punished under section 2023. (§ 2020, subd. (h).) Section 2023 provides for monetary sanctions based on misuse of the discovery process (§ 2023, subds. (a), (b)(1)), including the failure to respond or submit to authorized methods of discovery (§ 2023, subd. (a)(4)), making, without substantial justification, an unmeritorious objection to discovery (§ 2023, subd. (a)(5)), and making an evasive response to discovery. (§ 2023, subd. (a)(6).)[5] The trial court adopted the referee's findings that Mousseau did not comply with the deposition or document production subpoenas and that Mousseau's purported compliance by producing documents to himself was not a good faith position. On appeal, Mousseau contends once more that he complied with the document subpoenas by producing the documents to himself. He does not address the deposition subpoena findings, and we therefore deem that issue waived. (*Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 699–700 [46 Cal.Rptr.2d 119].)

█ We review the trial court's ruling under the abuse of discretion standard, resolving all evidentiary conflicts in favor of that ruling. (*Laguna Auto Body v. Farmers Ins. Exchange* (1991) 231 Cal.App.3d 481, 487, 488 [282 Cal.Rptr. 530], overruled on other grounds by *Garcia v. McCutchen* (1997) 16 Cal.4th 469, 478, fn. 4 [66 Cal.Rptr.2d 319, 940 P.2d 906].) Considering this standard of review, sanctions were warranted. █ First, Mousseau's reliance on Sears's mistaken designation of him as the deposition officer to whom he should deliver the subpoenaed documents is not a good faith contention. Not only did the subpoenas call for production at the address of Sears's lawyers, but Mousseau, as a lawyer himself, must have known what was intended. Simply put, his contention that he could comply by delivering the documents to himself is preposterous. Second, regardless of what Mousseau should have known, the evidence shows that he in fact understood his obligations under the subpoenas. According to the evidence from Sears's lawyers, Mousseau acknowledged his failure to deliver the documents on time and promised to do so quickly. From this, we infer that

---

[5] Section 2020 has since been renumbered as sections 2020.010 through 2020.510. Section 2023 has since been renumbered as sections 2023.010 through 2023.040.

Mousseau in fact knew he was obliged to produce the documents to Sears's lawyers. His repeated failures to do so were sanctionable. (§ 2023, subd. (a)(4), (5) & (6).)

■ Mousseau also contends that Sears's discovery motion should have been denied because it was brought after the discovery cutoff date in Sears's action against National Union. Discovery motions must be heard no later than 15 days before an action's initial trial date. (§ 2024, subd. (a).) The initial trial date in this action was November 3, 2003, and Sears concedes that under ordinary circumstances, it had an October 20, 2003, deadline for bringing discovery motions. ■ Sears contends, however, that Mousseau's false assurances that he would produce the documents after they were due, along with other delaying conduct, estop him from relying on the discovery motion cutoff date. (*Cuadros v. Superior Court* (1992) 6 Cal.App.4th 671, 675 [8 Cal.Rptr.2d 18] [under doctrine of equitable estoppel, one may not lull a party into inaction by words or deeds that lead to a false sense of security].) The abuse of discretion standard applies to this issue, and, under the substantial evidence rules, we resolve all evidentiary conflicts in Sears's favor. (*Ibid.*) Based on the evidence set forth below, we agree that Mousseau is estopped to rely on the discovery motion cutoff date.[6]

■ Section 2020 states that among the methods for discovery from a nonparty is an oral deposition under section 2025, with the nonparty's attendance secured by a deposition subpoena. (§ 2020, subd. (a).) When a subpoenaed nonparty fails to appear for a deposition or produce documents that were properly requested, the party who subpoenaed the witness may move to compel compliance with the subpoena. If the motion is granted, the court may also impose sanctions under section 2023. The motion must include a declaration showing that the moving party contacted the deponent to inquire about the nonappearance. (§ 2025, subd. (j)(3).) The record shows that Sears's lawyers were diligently trying to contact Mousseau about his deposition appearance and document production through September 30, 2003. Up to that time, Mousseau had refused to commit to attending his deposition, and had promised to produce the requested documents. On October 2, 2003, Mousseau faxed a letter stating for the first time that he had complied with the document production subpoenas by producing the documents to himself. On October 17, 2003, Sears faxed a letter to Mousseau which asked him to explain his position, especially in light of his earlier promises to perform. The lawyers directed Mousseau to produce the documents by October 22, 2003. Not having heard from Mousseau, Sears's lawyers faxed him another letter

---

[6] Section 2024 states that "any party" has the right to the discovery cutoff dates, leaving open the possibility that a nonparty such as Mousseau has no right to its protections. We need not reach that issue and therefore assume for discussion's sake only that section 2024 applied to Sears's motions.

on November 4, 2003, asking for a response. On November 6, 2003, Mousseau faxed back a letter which made it clear he had no intention of doing anything more to comply with Sears's subpoenas. Sears filed its discovery motion with the referee 20 days later.

In short, just 18 days before the motion cutoff date, and after weeks of evasions and false promises to comply with the subpoenas, Mousseau for the first time contended he had in fact complied, at least with the document production subpoenas, by producing the documents to himself. Sears's counsel was obligated to contact Mousseau to inquire about his nonappearance (§ 2025, subd. (j)(3)), and did so on October 17, 2003, asking that Mousseau comply within five days. Obtaining no response, Sears contacted Mousseau again on November 4, and finally heard from him two days later that he had no intention of complying, beyond his self-proclaimed act of self-production. Although Sears might have acted sooner in response to Mousseau's machinations, it was Mousseau who set this chain of events in motion by his evasions and false assurances. Even if Sears danced too close to the cutoff date, it was Mousseau who was leading. On this record, we see no abuse of discretion in finding that Mousseau was estopped from relying on the discovery motion cutoff date.[7]

### 3. *The Appeal Must Be Dismissed As to the Second Sanctions Order*

██ The trial court granted Sears's second sanctions request of $9,646 on April 8, 2004, in connection with Mousseau's continued efforts to peremptorily challenge the discovery referee. Notice of the ruling was given that day. An order awarding sanctions of more than $5,000 is appealable (§ 904.1, subd. (a)(11)), and Mousseau was required to file his notice of appeal within the next 60 days. (Cal. Rules of Court, rule 2(a).) On March 29, 2004, however, Mousseau filed his notice of appeal from the March 5, 2004, order denying his peremptory challenge to Chief Justice Lucas and granting Sears's discovery motion. At no time did he file a notice of appeal as to the April 8 sanctions order. Accordingly, we must dismiss the appeal as to that order. (*Sharp v. Union Pacific R.R. Co.* (1992) 8 Cal.App.4th 357, 361 [9 Cal.Rptr.2d 925]; *Norman I. Krug Real Estate Investments, Inc. v. Praszker* (1990) 220 Cal.App.3d 35, 47 [269 Cal.Rptr. 228] [notice of appeal limited to orders of specified date insufficient to give appellate court jurisdiction over other matters].)

---

[7] Although the parties raised with the referee the issue of whether Sears's motion was timely, his report includes no mention of it. Mousseau states in his opening brief that the referee found that Sears was "induced" to delay bringing its discovery motion. Given that the record is silent on this point, and given our obligation to presume the absence of error from a silent record (*Null v. City of Los Angeles* (1988) 206 Cal.App.3d 1528, 1532–1533 [254 Cal.Rptr. 492]), we assume that the referee made such a finding.

## DISPOSITION

For the reasons set forth above, the appeal is dismissed insofar as it relates to the denial of Mousseau's peremptory challenge to the discovery referee and to the April 8, 2004, order awarding Sears discovery sanctions of $9,646. The March 5, 2004, order granting Sears's motion to compel discovery and ordering Mousseau to pay discovery sanctions of $12,472.60 is affirmed. Respondent to recover its costs on appeal.

Cooper, P. J., and Boland, J., concurred.