[No. C055449. Third Dist. Aug. 19, 2008.]

PELTON-SHEPHERD INDUSTRIES, INC., Plaintiff, Cross-defendant and Respondent, v.
DELTA PACKAGING PRODUCTS, INC., Defendant, Cross-complainant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION†]**

†Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts IA and II of the Discussion.

COUNSEL

Tesser & Ruttenberg, Kenneth G. Ruttenberg; and Richard Archbold for Defendant, Cross-complainant and Appellant.

Law Offices of Charles L. Hastings and Charles L. Hastings for Plaintiff, Cross-defendant and Respondent.

OPINION

**ROBIE, J.**—After defendant and cross-complainant Delta Packaging Products, Inc. (Delta), allegedly engaged in "a practice of misuse [of] the discovery process" following the service of a set of demands for the inspection and production of documents by plaintiff and cross-defendant Pelton-Shepherd Industries, Inc. (Pelton-Shepherd), the trial court imposed terminating sanctions on Delta, striking Delta's answer to the complaint and dismissing Delta's cross-complaint, after previously imposing monetary sanctions of $2,500 on Delta.

From the subsequent default judgment in favor of Pelton-Shepherd, Delta appeals, arguing the trial court erred in granting Pelton-Shepherd's underlying motion to compel responses to the inspection demands because the motion was not heard before the discovery motion cutoff date and Pelton-Shepherd never moved to reopen discovery. Delta also contends (among other things) that the trial court erred in denying Delta's underlying motion for relief from the waiver of objections that resulted from Delta's failure to timely respond to the inspection demands.

In the published portion of the opinion, we conclude the trial court[1] botched its responsibilities under the Civil Discovery Act[2] and prejudicially abused its discretion in granting Pelton-Shepherd's motion to compel after the discovery motion cutoff date when Pelton-Shepherd had not moved to reopen discovery under Code of Civil Procedure section 2024.050.[3] As we will explain, a trial court has discretion to hear a discovery motion after the discovery motion cutoff date, but the exercise of that discretion is governed by section 2024.050, which requires the court to consider various factors in determining whether to hear a discovery motion after the cutoff date. Because the trial court here did not require Pelton-Shepherd to file a motion to reopen discovery under section 2024.050 before, or simultaneously with, filing its motion to compel, there is no indication in the record that the court considered any of the relevant factors.

We also conclude, in the unpublished portion of the opinion, that the trial court prejudicially abused its discretion in denying Delta's motion for relief from the waiver of objections because Delta's failure to timely respond to the inspection demands was the result of its attorney's excusable neglect.

Finally we conclude these errors prejudiced Delta because it is reasonably probable that without them there would have been no basis for the trial court to later impose either monetary or terminating sanctions on Delta for misuse of the discovery process. Accordingly, we will reverse.

---

[1] Except as specifically noted otherwise, all matters in this case were decided by Judge Saiers.

[2] Code of Civil Procedure section 2016.010.

[3] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

## FACTUAL AND PROCEDURAL BACKGROUND

### A

### *The Pleadings*

In September 2003, Pelton-Shepherd filed a complaint for declaratory relief and monies owed against Delta. According to Pelton-Shepherd's complaint, Delta had served (pursuant to an oral agreement) as a distributor of Pelton-Shepherd's gel packs in Southern California between January 1997 and May 2003. According to Pelton-Shepherd, Delta had terminated the distribution agreement in May 2003 and Pelton-Shepherd had accepted the termination, but Delta was continuing to claim the right to commissions for gel packs sold by Pelton-Shepherd. Pelton-Shepherd sought a declaration that the distribution agreement had been terminated. Pelton-Shepherd also alleged that Delta owed Pelton-Shepherd in excess of $29,714.75 in connection with a joint venture for a packaging distribution business in Northern California that had been part of the same oral agreement. Pelton-Shepherd sought damages in the amount of $29,714.75.

In October 2003, Delta filed its answer and a cross-complaint for damages for breach of contract, interference with prospective business advantage, abuse of trade secrets, and conversion. As relevant here, in the first cause of action in its cross-complaint (for breach of a written contract) Delta alleged it had entered into a written contract with Pelton-Shepherd around March 2003 "concerning the sale and distribution of certain coolant gel paks to be used by the parties['] customers."[4] Delta alleged Pelton-Shepherd breached the contract around June 2003 by refusing to pay commissions owed and "future commissions as they came due and payable, all to [Delta]'s damage in the sum of $7,085.00 for current damages, and the sum of $235,000.00 for future damages, said aforementioned sum calculated for fifteen (15) years at the historical rate of $17,000.00 per year."

Pelton-Shepherd filed its answer to the cross-complaint in November 2003.

Ultimately the case was set for trial on November 14, 2005. That meant discovery was to be completed by October 17,[5] and the last day to have any discovery motion heard was October 31. (See §§ 2016.060, 2024.020, subd. (a).) With respect to a demand for the inspection and production of

---

[4] A copy of the contract was supposedly attached to the cross-complaint, but no such copy is attached to the copy of the cross-complaint contained in the appellant's appendix.

[5] The 30th day before trial was actually October 15, but since that was a Saturday, the discovery cutoff date rolled forward to Monday, October 17. (See § 2016.060.)

documents (§ 2031.010 et seq.), discovery is considered completed on the day the response to the demand is due. (§ 2024.010.)

B

*The Discovery*

As will be apparent from the discussion that follows, the discovery in this case is a classic example of how not to conduct discovery (on the part of the lawyers) or to manage discovery (on the part of the court). If discovery was always managed in this manner, no civil case would ever get to trial. Unfortunately, it is necessary to recount all the convoluted proceedings in order to explain how the trial court erred.

On September 15, 2005, Pelton-Shepherd served Delta, by mail, with a second set of demands for the inspection and production of documents,[6] consisting of 19 demands numbered 3 through 21.[7] Demands Nos. 3 through 17 sought various documents relating to "the Quail Mountain Herbs account," which was the subject of the second cause of action (for breach of oral contract) in Delta's cross-complaint. Demands Nos. 18 through 21 sought documents relating to Delta's production and sale of gel ice products since January 2003. Specifically, demand No. 18 sought "[a]ny and all documents pertaining to the gel ice production/manufacturing set up that [Delta] had undertaken since January 2003 to present, including but not limited to production lay out diagrams and photos, purchase orders, vendor material billings and canceled checks." Demand No. 19 sought "[a]ny and all customer purchase orders received for Gel Ice Products by [Delta] or related entities from January 2003 to present." Demand No. 20 sought "[a]ny and all invoices of goods sold for Gel Ice Products by [Delta] or related entities from January 2003 to present." Demand No. 21 sought "[a]ny and all customer checks received for Gel Ice Products by [Delta] or related entities from January 2003 to present."

Given the date and method of service, Delta's responses to the inspection demands were due on October 20 (30 days plus five for mail service)—three days beyond the discovery cutoff date. (See §§ 1013, 2016.050, 2024.010, 2031.260, subd. (a).)

---

[6] Pelton-Shepherd actually called its inspection demands "requests," but we will use the word "demands" because that is the word used in the discovery statutes. (See §§ 2031.010–2031.320.)

[7] Demands Nos. 1 and 2 were apparently contained in Pelton-Shepherd's first set of inspection demands, served earlier in the case.

A settlement conference was scheduled for October 17, 2005, but Delta's attorney failed to attend. The matter was continued to October 31. Meanwhile, having received no response to its inspection demands, on October 21 Pelton-Shepherd's attorney sent a letter to Delta's attorney asserting that Delta had waived its right to object to the demands and asking for Delta's responses, without objections, within 10 days.[8]

At the expiration of that 10-day period on October 31, Pelton-Shepherd filed an ex parte motion to strike Delta's answer and cross-complaint on the grounds that Delta had (1) failed to file a settlement conference statement; (2) failed to attend the settlement conference; and (3) failed to respond to Pelton-Shepherd's inspection demands. The motion was to be heard on November 2.

In its opposition to the motion (filed Nov. 1), Delta asserted that Pelton-Shepherd could not seek terminating sanctions based on Delta's failure to respond to the inspection demands because Pelton-Shepherd had not first obtained a court order compelling Delta to respond to those demands. Delta also asserted that Pelton-Shepherd's request for terminating discovery sanctions was time-barred because the deadline for the hearing of discovery motions had passed.[9]

At the hearing on November 2, the court and the parties agreed to hold a settlement conference on November 14—the scheduled trial date—and to determine at that time what to do about a new trial date because the court was scheduled to conduct another trial that would last until November 18. Pelton-Shepherd's attorney asserted his need for the documents he had demanded from Delta so that he could prepare for trial, and Delta's attorney pointed out that no motion to compel had been filed. When Pelton-Shepherd's attorney asked if Delta's attorney was going to "require [him] to file a separate motion for the production of documents," Delta's attorney responded, "Well, you can do whatever you want, but it seems like you're time-barred. All discovery motions had to be heard 15 days before the trial date, which is November 14th. It's not my fault that you waited to bring an ex parte application." Delta's attorney later invited Pelton-Shepherd's attorney to call him the following morning so they could "talk about this off the court record, and maybe . . . work it out as professional attorneys."

---

[8] "If a party to whom an inspection demand is directed fails to serve a timely response to it, . . . [¶] . . . [t]he party to whom the inspection demand is directed waives any objection to the demand . . . ." (§ 2031.300, subd. (a).)

[9] Delta asserted the last day for hearing discovery motions was October 28, when in fact (as we have noted) it was October 31; nonetheless, the date *had* passed.

On November 3, the two attorneys talked on the telephone about Pelton-Shepherd's inspection demands, and Delta's attorney told Pelton-Shepherd's attorney that he would get back to him by the end of the day as to whether Delta would produce the documents. When Pelton-Shepherd's attorney did not receive the promised call, he wrote to Delta's attorney the next day asking Delta's attorney to "advise [him] as soon as possible as to when [he might] expect the documents." The following Monday, November 7, Delta's attorney wrote back, stating that he had "hear[d] back from Delta . . . which informed me that it will be able to assemble responsive documents by the end of this week. As soon as I receive them, I will immediately send you copies of the same."

On November 8, the court denied Pelton-Shepherd's motion to strike the answer and cross-complaint but sanctioned Delta $500.

Following the settlement conference on November 14, which was unsuccessful, trial was reset for March 27, 2006.[10] After the settlement conference, Delta's attorney told Pelton-Shepherd's attorney that Delta was providing the responsive documents to him that day for his review, but that he needed to sift through, copy, and page-number them. Thereafter, however, Delta's attorney failed to forward any documents to Pelton-Shepherd's attorney. Accordingly, on December 6, 2005, Pelton-Shepherd filed a motion to compel Delta to respond to the second set of demands for production of documents. The hearing on the motion was set for January 11, 2006. Consistent with the discovery statutes, Pelton-Shepherd did not yet seek an order to compel Delta to actually *produce* any documents for inspection and copying.[11]

On December 7, Delta's attorney wrote to Pelton-Shepherd's attorney regarding the motion to compel. He first reproached Pelton-Shepherd's attorney about filing the motion without first attempting to "resolve this matter extra-judicially." He explained that he had been "unable to get to the document production" "due to trial preparation and a trial which was to begin on November 28." He then asserted that the motion was time-barred due to

---

[10] "[A] continuance or postponement of the trial date does not operate to reopen discovery proceedings" (§ 2024.020, subd. (b)); however, "[o]n motion of any party, the court may grant leave to complete discovery proceedings . . . or to reopen discovery after a new trial date has been set" (§ 2024.050, subd. (a)).

[11] "If a party to whom an inspection demand is directed fails to serve a timely response to it," then "[t]he party making the demand may move for an order compelling response to the inspection demand." (§ 2031.300, subd. (b).) "If a party filing a response to a demand for inspection . . . thereafter fails to permit the inspection in accordance with that party's statement of compliance, the party demanding the inspection may move for an order compelling compliance." (§ 2031.320, subd. (a).)

the discovery motion cutoff. Then, "[n]otwithstanding the untimeliness of [the] motion," he "agree[d] to overnight to [Pelton-Shepherd's attorney] the documents by Tuesday, December 13, 2005," if Pelton-Shepherd's attorney would take the motion to compel off calendar. If not, then Delta's attorney said he would seek an ex parte order clarifying "that the discovery and discovery motion cut-off dates were not extended by the continued trial date."

Pelton-Shepherd's attorney did not respond to the letter from Delta's attorney or to two subsequent telephone messages. Nonetheless, on December 13 Delta's attorney sent a fax to Pelton-Shepherd's attorney stating that he was preparing to send the documents. He invited Pelton-Shepherd's attorney to call him "to discuss taking [the] motion off calendar."

On December 14, Delta's attorney notified Pelton-Shepherd's attorney by telephone that he would be filing the ex parte application for clarification of the discovery cutoff dates on December 16. He asked Pelton-Shepherd's attorney to stipulate to reopening discovery, and Pelton-Shepherd's attorney said he would speak to his client.[12]

Meanwhile, on December 15 Delta's attorney served Delta's responses to the inspection demands along with 248 pages of responsive documents. Delta agreed to produce all documents responsive to the first 15 of the demands (those relating to Quail Mountain Herbs), but objected to producing any documents in response to the last four demands (demands Nos. 18 through 21), which related to Delta's production and sale of gel ice products from January 2003 to the present, on the grounds (among others) that the demands sought "information which is not relevant or reasonably calculated to lead to the discovery of admissible evidence" and "privileged financial information and documents which involve trade secrets and confidential and proprietary information."

The following day, in disposing of Delta's ex parte application to clarify the discovery cutoff dates, the court noted, "Discovery not to be reopened; however, counsel/court shall work out any pending issues" at the hearing on the motion to compel in January.

---

[12] "Parties to an action may, with the consent of any party affected by it, enter into an agreement to extend the time for the completion of discovery proceedings or for the hearing of motions concerning discovery, or to reopen discovery after a new date for trial of the action has been set. This agreement may be informal, but it shall be confirmed in a writing that specifies the extended date. In no event shall this agreement require a court to grant a continuance or postponement of the trial in the action." (§ 2024.060.)

In subsequently opposing the motion to compel, Delta argued the motion should be denied as untimely. In reply, Pelton-Shepherd argued that Delta had waived its right to object to the timeliness of the motion both because Delta had not timely responded to the inspection demands and because Delta's attorney had "continually promise[d] to send the documents."

The trial court granted the motion to compel. Thereafter, on January 24, 2006, Delta filed a motion for relief from the waiver of its right to object to demands Nos. 18 through 21.[13] Delta's attorney claimed he had not served a timely response to the inspection demands because he had inadvertently failed to open the envelope containing the demands when he received it along with two other envelopes from Pelton-Shepherd's attorney. He further claimed he did not discover the unopened envelope until Pelton-Shepherd's attorney informed him in the letter of October 21, 2005, that the responses were overdue and any objections had been waived. Delta's attorney also asserted that the documents sought in demands Nos. 18 through 21 were "wildly beyond the scope of proper discovery" and contained "privileged and confidential information . . . during a period of time following any further relationship between the parties."

Delta's motion was set for hearing on February 24, 2006. Meanwhile, on February 15, 2006, the court entered a formal order granting Pelton-Shepherd's motion to compel Delta to respond to the inspection demands. That order required Delta to "fully respond without objection" within 30 days. Consistent with the fact that Pelton-Shepherd had not sought an order compelling the production of any documents, the February 15 order did not order Delta to produce any documents.

At the February 24 hearing on Delta's motion for relief from waiver of objections, the court first expressed the understanding that the case had previously been "on for a motion for production of documents," which the court believed it had granted, and the court asked why it should "set aside the granting of th[at] motion." The court also expressed uncertainty as to whether there *was* any such motion as a motion for relief from waiver of objections. When Delta's attorney identified the statutory basis for the motion, the court

---

[13] While a party who fails to serve a timely response to an inspection demand waives any objection to the demand, "[t]he court, on motion, may relieve that party from this waiver . . ." if "[t]he party has subsequently served a response that is in substantial compliance with Sections 2031.210, 2031.220, 2031.230, 2031.240, and 2031.280" and "[t]he party's failure to serve a timely response was the result of mistake, inadvertence, or excusable neglect." (§ 2031.300, subd. (a).)

asked him, "why don't you want to turn over the documents?" Delta's attorney argued the documents sought in demands Nos. 18 through 21 "have nothing whatsoever to do with this lawsuit," and Delta "shouldn't have to suffer because of [his] problem," i.e., his failure to timely respond to the inspection demands.

When the court asked why he needed the documents, Pelton-Shepherd's attorney read the allegation from the cross-complaint set forth above regarding Delta's claim for $235,000 in future damages for breach of contract based on unpaid commissions. He asserted that "Delta has actually gone out and started its own gel pack business and is soliciting those same customers that they are complaining for damages against us." He told the court he wanted the documents because "they can't have it both ways. They can't claim damages against us for not being able to sell those products to those customers, while at the same time they are making the profit from [those] customers."

In response, Delta's attorney asserted that the breach of contract claim in the cross-complaint was "really about . . . one issue only"—commissions Delta claimed Pelton-Shepherd owed relating to a client named Bio-Rad Laboratories that Pelton-Shepherd had taken over from Delta on the promise that Pelton-Shepherd would pay Delta commissions for sales Pelton-Shepherd made to Bio-Rad. Delta's attorney asserted that Delta "is not trying to compete with Bio-Rad. It has nothing whatsoever to do with my cross-complaint."

On March 21, 2006, the court issued its ruling denying Delta's motion for relief from waiver of objections "on the condition that [Pelton-Shepherd] abides by the existing protective order." It does not appear from the record that there *was* any "existing protective order"; however, the meaning of this reference to a protective order was clarified when the court entered its formal order denying Delta's motion on April 4, 2006. In that order, the court ordered "that the documents be produced forthwith," subject to several conditions restricting Pelton-Shepherd's right to use those documents.[14] This appears to be the protective order the court was referencing in its initial ruling.

Meanwhile, trial was reset to May 30, and Delta moved for reconsideration of the ruling denying its motion for relief from waiver of objections. The court denied that motion on May 2. On May 8, Delta served Pelton-Shepherd with its further responses to the document requests. Delta agreed without

---

[14] The court made this ruling compelling the production of documents even though Pelton-Shepherd had not yet filed a motion pursuant to section 2031.320 to compel Delta to produce any documents.

objection to produce documents responsive to demands Nos. 18, 20, and 21. With regard to demand No. 19, however, Delta asserted it was "unable to comply . . . because it is not nor has ever been in possession of such documents."

On May 22, Pelton-Shepherd filed a motion for terminating sanctions on the ground that Delta had "failed to obey the order dated February 15, 2006, compelling [Delta] to fully respond, without objection, to the Request for Production of Documents, Set Two within 30 days of the order."[15] The attached declaration and memorandum of points and authorities made clear, however, that Pelton-Shepherd was not complaining about Delta's *responses* to the inspection demands, as much as about the documents Delta had produced—or had *not* produced—in response to most of the inspection demands, including (but not limited to) demands Nos. 18 through 21. Pelton-Shepherd complained that Delta had sent "a pile of 1306 unorganized, undecipherable, and unintelligible documents" that were "not labeled to correspond with any of the requests." Pelton-Shepherd also complained that Delta had not produced any documents responsive to demand No. 19 and that Delta's production of documents responsive to demands Nos. 20 and 21 was "[i]ncomplete." Specifically, Pelton-Shepherd complained that Delta had produced more invoices for gel ice products Delta had sold since January 2003 (demand No. 20) than customer checks for those products (demand No. 21) and had not produced *any* related customer purchase orders (demand No. 19), even though "more than one-half of [the] invoices show a purchase order from [the] customer."

In addition to seeking terminating sanctions, Pelton-Shepherd also sought $2,500 in monetary sanctions.

In opposing Pelton-Shepherd's motion, Delta argued (among other things) that the only demands implicated by the February 15 order were the final four demands, and it had timely complied with the order by responding without objection to those demands and producing over 1,306 pages of documents as they are kept in the ordinary course of business.

In a ruling issued on June 23 following a hearing on June 14, the court (Judge McNatt) concluded that (1) the February 15 order applied to *all* of the inspection demands, not just the final four; (2) Delta had "not adequately explained why [it could not] produce [documents responsive to request

---

[15] By this time, the May 30 trial date had apparently been dropped, and no new trial date was ever set.

No.] 19, or the efforts made to provide it [*sic*]"; and (3) Delta had not met its obligations under the discovery statutes by "[s]imply providing more than 1300 pages of uncorrelated documents . . . , even if those documents are in chronological order." The court denied Pelton-Shepherd's request for terminating sanctions but granted the requested monetary sanctions and ordered the cross-complaint stayed "pending full compliance with Judge Saiers' Order, pursuant to C.C.P. Sections 2023(b)(1) and (4)(B)."[16] More specifically, the court ordered Delta to "fully and without objection provide all documents identified in Judge Saiers' Order, or to provide a statement of due diligence why they cannot do so, and to pay all sanctions now due and owing" within 20 days.[17]

On July 13, 2006, Delta served Pelton-Shepherd with further responses to the inspection demands. As relevant here, in response to demand No. 19 (customer purchase orders for gel ice products sold since Jan. 2003) Delta asserted that it had "made a diligent search and reasonable inquiry of all its files and records in an effort to comply with this Request," but was "unable to comply . . . because the particular documents requested have either never existed or are no longer in [Delta]'s possession, custody or control." Delta went on to explain that "[t]he majority of such purchase orders were verbal and, as such, no written purchase orders exist. Those purchase orders which were in writing are no longer in [Delta]'s possession, custody or control as [Delta] routinely disposes of such documents upon payment of the corresponding invoice. However, the identical information contained in each purchase order is also contained in the customer checks and invoices, copies of which were previously produced as Bates-numbered documents 362-470 and 471-1668, respectively. [¶] Defendant believes that some of its customers may be in possession, custody or control of the written purchase orders, if any. The names and addresses of [Delta]'s customers are contained on the invoices and customer checks."

In response to demand No. 20 (invoices for gel ice products sold since Jan. 2003), Delta asserted that it had "made a diligent search and reasonable inquiry of all of its files and records in an effort to fully comply with this Request" and had "complied with this Request by previously producing to [Pelton-Shepherd] copies of all invoices 'for Gel Ice Products' in [Delta]'s possession, custody or control from January 2003 to the present. All invoices are Bates-numbered 471-1668."

---

[16] The court's statutory citations were to a version of the Civil Discovery Act that had been superseded almost a year earlier (July 1, 2005).

[17] In making this order, Judge McNatt failed to recognize that Judge Saiers's February 15 order did not, in fact, identify any documents.

Similarly, in response to demand No. 21 (customer checks for gel ice products sold since Jan. 2003), Delta asserted that it had "made a diligent search and reasonable inquiry of all of its files and records in an effort to fully comply with this Request" and had "complied with this Request by previously producing to [Pelton-Shepherd] copies of all customer checks 'for Gel Ice Products' in [Delta]'s possession, custody or control from January 2003 to the present. All customer checks are Bates-numbered 362-470." Delta further asserted its belief "that any alleged missing checks may be in the possession, custody or control of [Delta]'s customers, all of which are referenced in [Delta]'s invoices, which are Bates-numbered 471-1668."

Delta's further responses to the inspection demands were verified by Spencer Pritikin, an officer of Delta.

On July 14, 2006, the day after serving its further responses to the inspection demands on Pelton-Shepherd, Delta filed a "notice" with the trial court of its compliance with the June 23 order. This notice included a copy of the further responses, as well as a copy of a check for $2,500 made payable to the clerk of the court. It also included a declaration from Pritikin in which he reiterated that "the majority of purchase orders requested in Request No. 19 have never existed as such orders were verbal. The written purchase orders are no longer in Delta's possession as they were routinely disposed of upon payment of the corresponding invoice."

Despite Delta's claimed compliance with the June 23 order, on August 30, 2006, Pelton-Shepherd filed a "renewed" motion for terminating sanctions on the ground that Delta had still "fail[ed] to comply with the orders of this Court dated February 15, 2006 and June 23, 2006, compelling [Delta] to fully and without objection provide documents." Specifically, Pelton-Shepherd complained about Delta's compliance with demands Nos. 19, 20, and 21.[18] With respect to demand No. 19 (customer purchase orders), Pelton-Shepherd asserted that "[t]he claim that [Delta] disposes of [written] purchase orders after payment is disingenuous" and "completely unbelievable under all commonly accepted business practices." With respect to demands Nos. 20

---

[18] Notwithstanding the fact that Pelton-Shepherd had essentially admitted in arguing Delta's motion for relief from the waiver of objections that the documents sought in demands Nos. 18 through 21 were relevant only to a single cause of action in Delta's cross-complaint, Pelton-Shepherd nonetheless sought as terminating sanctions the dismissal of Delta's cross-complaint *and* the striking of Delta's answer. Because we conclude the trial court prejudicially abused its discretion in ruling on two of the discovery motions that preceded Pelton-Shepherd's renewed motion for terminating sanctions, we need not decide whether the trial court abused its discretion in striking the answer when the documents at issue had nothing to do with Pelton-Shepherd's complaint.

(invoices) and 21 (customer checks), Pelton-Shepherd complained that while Delta had produced 1,198 invoices, it had produced only 109 customer checks, and a comparison of the checks to the invoices revealed that only 40 of the invoices produced were referenced on the checks produced. Thus, Pelton-Shepherd asserted, Delta had "refused to provide evidence of payment of 1,158 invoices." Additionally, the analysis of the 109 customer checks produced revealed that those checks referenced numerous invoice numbers for which no corresponding invoice had been found.

In its opposition to the renewed motion for terminating sanctions, Delta pointed out with respect to Pelton-Shepherd's complaint about demand No. 19 that "[n]o evidence of any kind is offered to call into question Delta's truthfulness [about its practice of routinely disposing of written purchase orders]; [Pelton-Shepherd] only presents its counsel's conclusion about what a business should do." With respect to Pelton-Shepherd's complaints about demands Nos. 20 and 21, Delta asserted that "Delta would not have any original 'customer checks'; the original checks are deposited by Delta in [its] bank. Any records Delta might have would be as a result of a custom or practice to keep copies of the checks it receives." Delta further asserted that it had "produced the checks that it has a copy of."

The motion was heard on September 28, 2006. The court's tentative decision was to deny the motion, but at the hearing Pelton-Shepherd's attorney convinced the court to withhold its ruling pending a deposition of Delta's custodian of records "on the issue of production of documents." The court rejected Pelton-Shepherd's request that the deposition take place in Stockton, but told Pelton-Shepherd's attorney that if he could "convince [the court] that this statement[19] was erroneous, [the court would] reimburse [him] for [his] expenses going to Los Angeles."

Delta designated Spencer Pritikin as its custodian of records, and Pelton-Shepherd deposed Pritikin in Los Angeles on October 12, 2006. Following the deposition, Delta produced 102 additional invoices to Pelton-Shepherd that were referenced on the customer checks Delta had previously produced.

Ultimately, the hearing on the renewed motion for terminating sanctions was continued to November 22, 2006.[20] On November 20, Pelton-Shepherd

---

[19] Apparently "this statement" referred to Delta's statement that it had made a diligent search and reasonable inquiry of all of its files and records in an effort to fully comply with Pelton-Shepherd's inspection demands.

[20] In the meantime, on October 26, the trial court entered an order releasing to Pelton-Shepherd the $2,500 Delta had previously paid to the court in satisfaction of the monetary sanctions the court ordered in June.

filed an unsworn "supplemental brief" in support of its motion. In that document, Pelton-Shepherd purported to detail what had happened at Pritikin's deposition.[21] Pelton-Shepherd complained that Pritikin "had very little to do with the assembly of the documents or their production." Pelton-Shepherd also asserted that in an effort to determine if any unproduced documents were located in Delta's customer files, Pelton-Shepherd's attorney asked for a small number of files to be pulled for review. Ultimately, it was agreed that Delta would review the files for two customers (Gee Tee Company and POM Wonderful) for whom Delta had previously produced customer checks without matching invoices. According to Pelton-Shepherd, that review produced "invoices from both files that should have been produced over one year ago." Based on this discovery, Pelton-Shepherd asserted "it is not credible that [Delta] made a diligent search for the production in the first place." Pelton-Shepherd also complained that following the discovery of the invoices, Delta refused (among other things) to "allow counsel to examine the staff members who actually compiled the documents."

At the hearing on November 22, Delta asserted that Pelton-Shepherd's supplemental brief was untimely, having been served on Delta less than 24 hours before the hearing. Delta also asserted that it had now provided Pelton-Shepherd with "105 total additional invoices" not previously produced that had been referenced in the customer checks previously produced. Delta claimed that "over 75 percent of those have nothing to do with gel packs."[22] Delta argued there was "no basis . . . to enter any terminating sanctions here" and suggested that the court reserve the issue of sanctions for the trial judge. The court took the matter under submission but gave Delta permission to file a posthearing opposition to the motion.

In that opposition, Delta complained about Pelton-Shepherd's attorney's "unsworn statements and conclusions about what the deposition showed." Delta offered its own take on Pritikin's testimony, supported by references to excerpts from the deposition transcript that were appended to an accompanying declaration filed by Delta's attorney. Delta argued that Pelton-Shepherd

---

[21] Pelton-Shepherd's supplemental brief contains numerous references to the transcript of the Pritikin deposition, but it does not specifically state that the transcript is attached to the brief. The copy of the brief included in Delta's appellant's appendix does not include any attachments. The copy of the brief that makes up Pelton-Shepherd's respondent's appendix, on the other hand, includes as an attachment what purports to be a certified copy of the Pritikin deposition transcript, which includes the deposition testimony and five deposition exhibits.

In its reply brief, Delta asserts that the supplemental brief "served on Delta failed to include a copy of the transcript of the Pritikin deposition" and "Delta did not know that Pelton allegedly attached the transcript as an exhibit to the supplemental [brief] until receipt of Pelton's Respondent's Appendix."

[22] Delta explained that the reason the invoices had nothing to do with gel packs, but the customer checks referencing those invoices *did* have to do with gel packs, was that the "customers will pay a variety of invoices on one check."

was essentially seeking "terminating sanction[s] [because Delta] missed approximately 25 invoices" that "have nothing to do with [Pelton-Shepherd]'s complaint and are only arguably discoverable based on broad wording in [Delta]'s cross-complaint."

On December 7, 2006, the court granted Pelton-Shepherd's motion for terminating sanctions without further explanation. The court entered a formal order on January 10, 2007. In that order, the court found that Delta had "engaged in a practice of misuse of the discovery process, including, but not limited to: [¶] (a) Failing to submit to an authorized method of discovery; [¶] (b) Making an untruthful response to discovery; [¶] (c) Opposing, unsuccessfully and without substantial justification, a motion to compel discovery; and [¶] (d) Disobeying court orders to provide discovery." The court also found that "[a]dditional orders to compel discovery or providing for issue or evidentiary sanctions would be ineffectual or inadequate." Accordingly, the court struck Delta's answer and dismissed its cross-complaint with prejudice.

The trial court subsequently granted Pelton-Shepherd a default judgment in the amount of $32,913.76, which included $35,760.51 in damages and $3,100 in costs relating to the Pritikin deposition, offset by $5,946.75 that Pelton-Shepherd owed Delta. Delta filed a timely notice of appeal from that judgment.

## DISCUSSION

### I

### *Discovery After the Discovery Cutoff*

Delta contends the trial court erred in granting Pelton-Shepherd's motion to compel Delta to respond to the inspection demands because the demands and the motion were both untimely. Delta contends that because the later terminating sanctions were based on Delta's "alleged violation" of the February 15, 2006, order compelling Delta to respond to the inspection demands, those sanctions were "fruit of the poisonous tree" and should be reversed on that basis. As we will explain, we agree with Delta and conclude the trial court prejudicially abused its discretion in granting the motion to compel without first determining whether discovery should be reopened.

### A

### *Timeliness of the Inspection Demands**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 1568.

B

*Timeliness of the Motion to Compel*

We now turn to Delta's argument that the motion to compel was untimely. As we have explained, the last day to have any discovery motion heard was October 31.[23] Pelton-Shepherd did not *file* its motion until December 6, and the hearing on the motion was not set, and did not occur, until January 11—nearly two and one-half months late. Thus, Delta is correct that the motion to compel was untimely.

In response, Pelton-Shepherd asserts that Delta "is subsequently estopped from relying on the October 31, 2005 discovery motion cutoff" date because it was *Delta's* fault that the motion to compel was untimely. Essentially, Pelton-Shepherd suggests that but for Delta's conduct, including "false assurances that the documents would be produced," Pelton-Shepherd would have been able to meet the discovery motion cutoff date.

■ "[U]nder [the] doctrine of equitable estoppel, one may not lull a party into inaction by words or deeds that lead to a false sense of security." (*Sears, Roebuck & Co. v. National Union Fire Ins. Co. of Pittsburgh* (2005) 131 Cal.App.4th 1342, 1351 [32 Cal.Rptr.3d 717].) "[F]or the doctrine of equitable estoppel to apply," however, "the party asserting estoppel must rely on the other party's conduct, to its detriment." (*Lusardi Construction Co. v. Aubry* (1992) 1 Cal.4th 976, 994 [4 Cal.Rptr.2d 837, 824 P.2d 643].)

Here, Pelton-Shepherd suggests the reason its motion to compel was untimely was because after its ex parte motion to strike Delta's answer and cross-complaint was denied on November 2, 2005, Pelton-Shepherd "waited until December 5, 2005 to file [its] Motion to Compel due to [Delta]'s continued assurances that [it] would comply with the [inspection demands]." In other words, Pelton-Shepherd suggests that Delta's assurances made Pelton-Shepherd miss the discovery motion cutoff date. The reason this argument does not support a finding of estoppel is simple. As we have noted already, October 31, 2005, was not, as Pelton-Shepherd asserts, "the statutory deadline to *file* discovery motions" (italics added), it was the deadline to have

---

[23] Pelton-Shepherd mistakenly asserts that "all discovery motions were to be *filed* by October 31, 2005." (Italics added.) This is a misreading of the applicable statute. (See § 2024.020, subd. (a) ["Except as otherwise provided in this chapter, any party shall be entitled as a matter of right . . . to have motions concerning discovery *heard* on or before the 15th day, before the date initially set for the trial of the action." (Italics added.)].)

such motions *heard.* Thus, when Pelton-Shepherd's ex parte motion to strike was heard on November 2, it was already too late for Pelton-Shepherd to have a motion to compel heard. What Delta said and did after November 2 may have led Pelton-Shepherd to delay filing its motion to compel until December 6, but those words and actions did not prevent, and could not have prevented, Pelton-Shepherd from meeting the discovery motion cutoff date, because that date had already passed. Accordingly, Pelton-Shepherd's estoppel argument fails.

The issue, then, is whether the trial court erred, or abused its discretion, in granting Pelton-Shepherd's motion to compel after the discovery motion cutoff date. The thrust of Delta's argument appears to be that the trial court was required, as a matter of law, to deny the motion to compel because it was not heard within the time allowed by law. Pelton-Shepherd, on the other hand, argues the trial court had discretion to hear the motion to compel after the discovery motion cutoff date, and we should review the court's decision to do so for abuse of discretion. As we will explain, we agree with Pelton-Shepherd, but we conclude the trial court abused its discretion in hearing, and granting, the belated motion to compel.

█ Subdivision (a) of section 2024.020 specifies that "[e]xcept as provided in this chapter, any party shall be entitled *as a matter of right* . . . to have motions concerning discovery heard on or before the 15th day, before the date initially set for the trial of the action." (Italics added.) Thus, if a party properly notices a discovery motion to be heard on or before the discovery motion cutoff date, that party has a *right* to have the motion heard. By negative implication, a party who notices a discovery motion to be heard *after* the discovery motion cutoff date does not have a right to have the motion heard. But the fact that a party does not have a *right* to have a discovery motion heard after the discovery motion cutoff date does not mean the court has no *power* to hear it, or that the court errs in hearing it. Indeed, subdivision (a) of section 2024.050 specifically allows a discovery motion to be heard after the discovery motion cutoff date by providing that "the court may grant leave . . . to have a motion concerning discovery heard, closer to the initial trial date, or to reopen discovery after a new trial date has been set."[24] But that statute also specifies that such leave may be granted "[o]n motion of any party." (§ 2024.050, subd. (a).) █ Moreover, such a motion must be accompanied by a meet and confer declaration,[25] and in exercising its discretion to grant or deny the motion the court must consider various factors, including (but not limited to) "[t]he necessity and the reasons

---

[24] The statute also provides for a motion "to complete discovery proceedings . . . closer to the initial trial date." (§ 2024.050, subd. (a).)

[25] A meet and confer declaration "shall state facts showing a reasonable and good faith attempt at an informal resolution of each issue presented by the motion." (§ 2016.040.)

for the discovery" and "[t]he diligence or lack of diligence of the party seeking . . . the hearing of a discovery motion, and the reasons that . . . the discovery motion was not heard earlier." (§ 2024.050, subds. (a), (b)(1), (2).)

Here, by the time Pelton-Shepherd filed its motion to compel on December 6, 2005, the cutoff date for hearing such a motion was more than a month past, and a new trial date had been set for late March 2006. Nevertheless, Pelton-Shepherd did not seek leave from the court under section 2024.050 to reopen discovery so that its motion to compel could be heard consistent with the foregoing statutes.[26] Instead, Pelton-Shepherd simply ignored the close of discovery and sought an order compelling responses to its inspection demands as though there had been no discovery motion cutoff date.[27]

Noting that a "trial court may grant leave . . . to have a motion concerning discovery heard" after the discovery motion cutoff date "on a motion of any party," Pelton-Shepherd suggests the trial court properly exercised "its discretion to allow [the] Motion to Compel to [be heard] after the discovery deadline" when, at the December 16, 2005, hearing on Delta's ex parte application to clarify the discovery cutoff dates, the court "failed to reopen discovery" but "granted leave to counsel to 'work out any pending issues' at the January 11, 2006 hearing on [the] Motion to Compel." We are not persuaded. As we have noted, Pelton-Shepherd did not file a motion for leave to reopen discovery so that its motion to compel could be heard after the discovery motion cutoff date. It is disingenuous for Pelton-Shepherd to suggest the trial court properly exercised its discretion in granting a motion Pelton-Shepherd never made.

Although Pelton-Shepherd had no *right* to have its motion to compel heard after the passage of the discovery motion cutoff date, we do not question that the trial court had discretion to hear the motion. But "[t]he scope of discretion always resides in the particular law being applied, i.e., in the 'legal principles governing the subject of [the] action . . . .' Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an 'abuse' of discretion." (*City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1297 [255 Cal.Rptr. 704].) Here, the trial

---

[26] Pelton-Shepherd could have combined its motion to compel with a motion to reopen discovery, so that the trial court could have first decided whether to reopen discovery and then, if it did, whether to grant the motion to compel.

[27] Pelton-Shepherd did this even though over a month earlier, at the November 2 hearing on Pelton-Shepherd's ex parte motion to strike, Delta's attorney had told Pelton-Shepherd's attorney that a motion to compel was "time-barred" because "[a]ll discovery motions had to be heard 15 days before the trial date."

court's discretion to hear Pelton-Shepherd's motion to compel was governed by section 2024.020, which provided that (1) the last day for Pelton-Shepherd to have its motion to compel heard as a matter of right was October 31, 2005, and that (2) the postponement of the trial date did not "operate to reopen discovery proceedings" "[e]xcept as provided in Section 2024.050"—that is, except upon a successful *motion* for leave to reopen discovery. Moreover, under section 2024.050, subdivision (b), the trial court's discretion to grant such a motion was not unfettered, but could be exercised only upon "tak[ing] into consideration any matter relevant to the leave requested, including, but not limited to . . . [¶] . . . [t]he necessity and the reasons for the discovery" and "[t]he diligence or lack of diligence of the party seeking . . . the hearing of a discovery motion, and the reasons that . . . the discovery motion was not heard earlier."

■ Here, because the trial court did not require Pelton-Shepherd to file a motion for leave to reopen discovery under section 2024.050, there is no indication in the record that the court considered any of the matters relevant to whether discovery should have been reopened for the hearing of Pelton-Shepherd's motion to compel, including (but not limited to) (1) the reasons Pelton-Shepherd believed it needed the documents it was seeking; and (2) Pelton-Shepherd's diligence or lack of diligence in seeking those documents and in seeking a hearing on its motion to compel. Had the trial court required the filing of a motion to reopen discovery under section 2024.050, so that the parties could have offered evidence and argument on these and other relevant factors, the court would have had an informed basis on which to exercise its discretion to hear (or not hear) Pelton-Shepherd's motion to compel.

By simply hearing the motion to compel without first deciding whether discovery should be reopened for that purpose under all of the relevant circumstances, the trial court "transgresse[d] the confines of the applicable principles of law" (*City of Sacramento v. Drew, supra*, 207 Cal.App.3d at p. 1297) and thereby abused its discretion.

The next question is whether the trial court's abuse of discretion in hearing the belated motion to compel was prejudicial to Delta. (See § 475; Cal. Const., art. VI, § 13.) As we have noted, Delta contends the error was prejudicial because the later terminating sanctions were based on Delta's "alleged violation" of the order the trial court entered on the motion to compel.

In determining whether the trial court's abuse of discretion was prejudicial, the question for us is whether it is reasonably probable that a result more favorable to Delta would have been reached in the absence of the error. (See *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800–802 [16 Cal.Rptr.3d 374, 94 P.3d 513].) Answering this question is not (as Delta would have it) simply a matter of noting that the terminating sanctions were based (at least in part) on the order the trial court entered on the motion to compel. This is so because if the trial court had denied Pelton-Shepherd's motion to compel on the ground that the discovery motion cutoff date had passed and Pelton-Shepherd had not moved to reopen discovery—i.e., if no error had occurred—Pelton-Shepherd still would have had the opportunity to move to reopen discovery. The hearing on the motion to compel was on January 11, 2006, and trial was not set to begin until March 27, 2006. Faced with the denial of its motion to compel not on the merits but on this procedural basis, Pelton-Shepherd could have filed a motion to reopen discovery so that its motion to compel could be heard. Actually, given that by this time Delta had already served its responses to the inspection demands (albeit belatedly), what Pelton-Shepherd could have more reasonably chosen to do was file a motion to reopen discovery along with a motion to compel further responses to demands Nos. 18 through 21 on the ground that Delta's objections to those demands were without merit because Delta had waived those objections by failing to serve its responses in a timely manner. (See § 2031.310, subd. (a)(3) [authorizing a motion to compel further response on the ground an objection is without merit].) Had Pelton-Shepherd done so, the trial court would have been required to determine, under all of the relevant factors, whether discovery should be reopened so that Pelton-Shepherd could pursue discovery of the documents relating to Delta's manufacture and sale of gel ice products from January 2003 forward. This would have required the court to consider (among other things) the reasons Pelton-Shepherd believed it needed those documents and Pelton-Shepherd's diligence or lack of diligence in seeking the documents.

On the record before us, it is reasonably probable the trial court would have denied Pelton-Shepherd's motion to reopen discovery. Of particular significance is the fact that while the case had been at issue since November 2003, when Pelton-Shepherd filed its answer to Delta's cross-complaint, Pelton-Shepherd waited until September 2005, less than two months before the initial trial date, to serve its inspection demands seeking discovery of the documents relating to Delta's manufacture and sale of gel ice products. The record before us contains no explanation for this delay.

Another significant factor is the marginal relevance of these documents. As we have noted, at the hearing on Delta's motion for relief from waiver of objections the court inquired into Pelton-Shepherd's need for the documents. Pelton-Shepherd's attorney asserted they were relevant to Delta's cause of

action for breach of written contract, in which Delta sought damages for commissions Pelton-Shepherd allegedly owed but refused to pay under a contract the parties had entered into in March 2003. Pelton-Shepherd's attorney asserted that Delta was "soliciting those same customers that they are complaining for damages against us" and that Delta could not "claim damages against us for not being able to sell those products to those customers, while at the same time they are making the profit from [those] customers."

Based on Pelton-Shepherd's argument to the trial court, it is difficult to fathom the relevance of the documents Pelton-Shepherd sought in demands Nos. 18 through 21. Delta was not, as Pelton-Shepherd argued to the trial court, seeking damages against Pelton-Shepherd in its cross-complaint "for not being able to sell" gel ice products to certain customers; rather, Delta was seeking damages for commissions that Pelton-Shepherd allegedly owed under a contract between the parties for products that Pelton-Shepherd was selling. Pelton-Shepherd did not explain why Delta's right to commissions for products sold by Pelton-Shepherd—assuming Delta had such a right in the first place—would have been affected by the fact that Delta was selling its own products to the same customers. Thus, it does not reasonably appear that documents evidencing Delta's sale of such products would have had any bearing on the case.

Based on the foregoing, it is reasonably probable that upon proper consideration of a motion to reopen discovery, the trial court would have determined that discovery should not be reopened simply to allow Pelton-Shepherd to belatedly pursue documents that were of little, if any, relevance to the case. And if the trial court had not reopened discovery, then there would have been no basis to impose the $2,500 in monetary sanctions on Delta and no basis to later impose terminating sanctions on Delta for engaging in "a practice of misuse [of] the discovery process." By this reasoning, the trial court's abuse of discretion in considering (and granting) Pelton-Shepherd's motion to compel without first deciding whether to reopen discovery under section 2024.050 was prejudicial.

## II

*The Motion for Relief from the Waiver of Objections**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante,* page 1568.

## DISPOSITION

The judgment is reversed, and the case is remanded to the trial court with instructions to (1) vacate its January 10, 2007, order striking Delta's answer and dismissing Delta's cross-complaint; and (2) vacate that portion of its June 23, 2006, order imposing $2,500 in monetary sanctions on Delta. Delta shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a).)

Morrison, Acting P. J., and Cantil-Sakauye, J., concurred.