Filed 9/21/23  P. v. Hicks CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B319189 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA275712) |
| v. | |
| GEORGE EDWARD HICKS, | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County.  Mildred Escobedo, Judge.  Affirmed.

Corey J. Robins, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan S. Pithey, Assistant Attorney General, Noah P. Hill and Kathy S. Pomerantz, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellant George Edward Hicks appeals from orders summarily denying his petition for resentencing under Penal Code section 1172.6[1] and his request for postconviction discovery under section 1054.9. Hicks argues, and the People concede, the trial court erred when it failed to appoint counsel after Hicks filed a facially valid section 1172.6 petition. However, the People argue, and we agree, the trial court's error was harmless because Hicks was categorically ineligible for relief based on his record of conviction, which established Hicks acted with malice aforethought and was the actual killer. Regarding his section 1054.9 discovery request, Hicks has not shown he made a good faith effort to obtain the requested materials from his trial counsel. Accordingly, we affirm both orders.

## FACTUAL AND PROCEDURAL BACKGROUND

Given the nature of this appeal, our recitation of the facts is limited. A more detailed account of the facts can be found in our opinion from Hicks's direct appeal *People v. Hicks* (Dec. 24, 2007, B192314) (*Hicks*).

On December 4, 2004, Raymond Mitchell was standing outside, talking to three individuals. (*Hicks, supra*, B192314 at p. *1.) Hicks walked up behind Mitchell and threw gasoline at him, then lit Mitchell on fire with a lighter. (*Ibid.*) Mitchell died in the hospital two days later from pneumonia caused by burns to his respiratory tract. (*Ibid.*)

An information charged Hicks with one count of murder (§ 187, subd. (a)), and alleged Hicks personally used a deadly and dangerous weapon, to wit, gasoline, during the commission of the offense (§ 12022, subd. (b)(1)).

---

[1] All statutory references are to the Penal Code.

2

At trial, the prosecution put forward two theories of first degree murder—either Hicks committed a willful, deliberate, and premeditated killing, or, alternatively, Hicks committed murder perpetrated by torture. The jury was instructed with CALJIC 8.10 [defining murder as a killing done with malice aforethought]; CALJIC 8.11 [defining express and implied malice]; and CALJIC 8.20 [defining first degree murder as a willful, deliberate, and premeditated killing]. With respect to the murder perpetrated by torture theory, the jury was instructed with CALJIC 8.24, which read: "Murder which is perpetrated by torture is also murder of the first degree. [¶] The essential elements of murder by torture are: [¶] 1. One person murdered another person; [¶] 2. The perpetrator committed the murder with a willful, deliberate, and premeditated intent to inflict extreme and prolonged pain upon a living human being for the purpose of revenge, extortion, persuasion or for any sadistic purpose; and [¶] 3. The acts or actions taken by the perpetrator to inflict extreme and prolonged pain were a cause of the victim's death. [¶] The crime of murder by torture does not require any proof that the perpetrator intended to kill his victim, or any proof that the victim was aware of pain or suffering. [¶] The word 'willful' as used in this instruction means intentional. [¶] The word 'deliberate' means formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action. [¶] The word 'premeditated' means considered beforehand."

The jury was also instructed on causation with CALJIC 3.40 and 3.41. The causation instructions read: "To constitute the crime of murder there must be in addition to the death of the victim an unlawful act which was a cause of that . . . victim's

death. [¶] The criminal law has its own particular way of defining cause.  A cause of a victim's death is an act that sets in motion a chain of events that produces as a direct, natural and probable consequence of the act the victim's death and without which the victim's death would not occur. [¶] There may be more than one cause of the death of the victim.  When the conduct of two or more persons contributes concurrently as a cause of death, the conduct of each is a cause of death if that conduct was also a substantial factor contributing to the result.  A cause is concurrent if it was operative at the moment of death and acted with another cause to produce the death of Raymond Mitchell. [¶] If you find that the defendant's conduct was a cause of Raymond Mitchell's death, then it is no defense that the conduct of some other person, even the deceased person, contributed to the death."

The jury convicted Hicks of first degree murder, however, the verdict form did not indicate which theory the jury relied on. The trial court sentenced Hicks to a term of 25 years to life. A different panel of this division affirmed Hicks's conviction on appeal.  (*Hicks*, *supra*, B192314 at p. *1.)

In January 2020, Hicks filed a petition for resentencing under section 1172.6, which was denied.

In January 2022, Hicks again petitioned for resentencing under section 1172.6.  On a form resentencing petition, Hicks indicated he was convicted of first or second degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine.  He further indicated that he could not now be convicted of first or second degree murder because of changes made to sections 188 and 189, effective January 1, 2019. He alleged that he could no longer be convicted under those

sections because:  he was not the actual killer; he did not, with the intent to kill, aid, abet, or assist the actual killer in the commission of first degree murder; and he was not a major participant in the felony and did not act with reckless indifference to human life during the course of the crime or felony.  Hicks requested the appointment of counsel.

Hicks also moved for discovery pursuant to section 1054.9, which allows certain offenders to obtain materials to prepare a petition for writ of habeas corpus.  Hicks sought the following categories of materials:  (1) all materials in defense counsel's trial files, including video footage and investigation reports; (2) all materials in possession of the prosecution at the time of trial, including the arrest warrant, video footage of the incident, video footage from various locations, "still shoots" or "videos from cell phone of government agents used to lure [Hicks]" to the scene of the crime, "all photos of the container that was tested" by the "finger printing crime lab," all agreements with the attorney of record in this case to suppress criminal records of any prosecution witness "from the court and/or jury," and the number of all Black potential jurors at jury selection; and (3) all materials used in the investigation in this case, including phone records of the investigating detectives and all photos controlled by the Los Angeles Police Department's Southwest Division.

The trial court denied Hicks's section 1172.6 petition without appointing counsel, finding Hicks did not qualify for relief as the actual killer and sole perpetrator of the crime. The trial court also denied Hicks's section 1054.9 discovery request on the grounds it was successive.

## DISCUSSION

### I.  The trial court erred when it failed to appoint counsel, however, the error was harmless

Hicks argues the trial court erred by denying his section 1172.6 petition without appointing counsel, requesting briefing, and holding an evidentiary hearing.  As discussed below, we agree the trial court erred, but find the error harmless.[2]

### A.  Governing law

Senate Bill No. 1437 (2017–2018 Reg. Sess., Stats. 2018, ch. 1015, § 2, p. 6675; Senate Bill 1437) "eliminated natural and probable consequences liability for murder as it applies to aiding and abetting, and limited the scope of the felony-murder rule." (*People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).) The Legislature sought to ensure that murder liability was not imposed on a person who was not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.  (*People v. Gentile* (2020) 10 Cal.5th 830, 842 (*Gentile*).)

To achieve this purpose, Senate Bill 1437 amended the felony murder rule by adding section 189, subdivision (e), which provides felony murder liability will attach only if the person was:  (1) the actual killer; (2) an aider and abettor who acted with the intent to kill; or (3) a major participant in the underlying felony and acted with reckless indifference to human life.  Section 188, subdivision (a)(3), further limited felony murder liability and the natural and probable consequences doctrine,

---

[2]  Hicks requested judicial notice of his record of conviction. We deferred that ruling until we considered the merits of this appeal.  We now grant his request.

6

providing: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime."

Individuals convicted of felony murder or murder under the natural and probable consequences doctrine may petition to vacate the conviction and be resentenced on any remaining counts, if they can show they could not now be convicted of murder because of changes in the law. (§ 1172.6; *Lewis*, *supra*, 11 Cal.5th at pp. 959–960.) To apply for resentencing, an individual must file a petition in the trial court stating that: "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder[;] [¶] [and] (3) The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subds. (a)(1)–(3); see also § 1172.6, subd. (b)(1)(A).)

Upon receiving a facially valid petition, the trial court must appoint counsel if requested by the petitioner. (§ 1172.6, subd. (b)(3); *Lewis*, *supra*, 11 Cal.5th at p. 957.) After the appointment of counsel, the trial court may look at the record of conviction to determine whether a petitioner has made a prima

7

facie case for relief. (*Lewis*, at p. 971.) The record of conviction allows the trial court "to distinguish petitions with potential merit from those that are clearly meritless." (*Ibid.*) However, the trial court " 'should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' " (*Ibid.*) Nonetheless, " 'if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Ibid.*)

We independently review the trial court's determination that the petitioner failed to make a prima facie showing for relief. (*People v. Harden* (2022) 81 Cal.App.5th 45, 52.)

### B. Analysis

The parties agree Hicks filed a facially valid petition under section 1172.6. Hicks's petition alleged he was convicted of first or second degree murder under a felony murder or natural and probable consequences theory. He further alleged he could not now be convicted of first or second degree murder after the amendments to sections 188 and 189 because he was not the actual killer, he did not act with the intent to kill in aiding and abetting the actual killer, and he was not a major participant in the murder who acted with reckless indifference to human life.

Thus, upon Hicks's filing of his facially valid petition, he was entitled to the appointment of counsel, and the trial court's failure to do so was error. (*Lewis*, *supra*, 11 Cal.5th at p. 957.)

We review the failure to appoint counsel in the context of a section 1172.6 petition under the harmless error standard set forth in *People v. Watson* (1956) 46 Cal.2d. 818. (*People v. Mancilla* (2021) 67 Cal.App.5th 854, 864.) Under this standard,

8

we determine whether the petitioner can show a reasonable probability he would have achieved a more favorable result absent the error. (*Id.* at p. 864.) We will find the failure to appoint counsel harmless if the record of conviction establishes the petitioner is ineligible for relief under section 1172.6 as a matter of law. (*People v. Hurtado* (2023) 89 Cal.App.5th 887, 893; see *Lewis, supra,* 11 Cal.5th at p. 971.)

Here, Hicks cannot show a reasonable probability he would have achieved a more favorable result had the trial court appointed counsel. The record of conviction conclusively established Hicks was ineligible for relief as the jury instructions and verdict demonstrated he was the actual killer and acted with malice aforethought or an equally culpable mens rea. Hicks was the sole perpetrator of the crime and there was no evidence, argument, or instruction that would suggest another individual's involvement. Generally, this finding is sufficient to find a petitioner ineligible for relief under section 1172.6 as a matter of law. (See *People v. Delgadillo* (2022) 14 Cal.5th 216, 230 [finding petitioner was ineligible for relief as a matter of law because the record established he was the actual killer and sole perpetrator of the crime].) Further, in addition to establishing Hicks was the actual killer, the record of conviction also established Hicks acted with malice aforethought or the intent to torture, i.e., the intent to inflict extreme pain to exact revenge or for some other sadistic purpose. The trial court instructed the jury on two theories of first degree murder—either Hicks committed a willful, deliberate, and premeditated killing or he committed murder perpetrated by torture. Under either theory, the jury found Hicks acted with malice aforethought or with an intent to torture or potentially both. If the jury found Hicks guilty of a willful, deliberate, and

9

premeditated killing, it must have concluded Hicks acted with express malice, i.e., the intent to kill. If the jury agreed with the prosecution's second theory, that is, Hicks committed murder perpetrated by torture, it must have concluded Hicks acted with the intent to torture, which despite the changes to sections 188 and 189, remains a statutorily listed type of first degree murder. (§ 189, subdivision (a) ["All murder that is perpetrated by means of . . . torture, or by any other kind of willful, deliberate, and premeditated killing . . . is murder of the first degree"].) Therefore, Hicks is ineligible for relief as a matter of law under section 1172.6 because he could still be convicted of first degree murder under amended sections 188 and 189. (See *Gentile*, *supra*, 10 Cal.5th at pp. 827–828.)

Hicks's lengthy briefs essentially put forward two responses to the unavoidable conclusion the jury found he was the actual killer. First, he asserts he still comes within the ambit of section 1172.6, because it is likely the jury found him guilty under an imputed malice theory because the prosecution's theory of murder perpetrated by torture did not require a finding that he acted with the intent to kill. Thus, Hicks argues, although the jury was not instructed on felony murder liability, his first degree murder conviction rested on a theory akin to felony murder where malice was imputed to him based solely on his participation in a crime, here, torture. Second, Hicks asserts the record of conviction does not conclusively establish he was the actual killer. Hicks argues the facts demonstrate the connection between his act of setting Mitchell on fire and Mitchell's death two days later from pneumonia is too attenuated in light of recent case authority, which held the actual killer must be the

10

individual who personally killed the victim. Neither argument has merit.

Regarding his first argument, Hicks is correct that the jury instructions and the verdict form leave open the possibility the jury convicted Hicks of first degree murder even if it did not find he acted with the intent to kill. Assuming the jury adopted the prosecution's theory of murder perpetrated by torture, it may have only found Hicks acted with implied malice given an essential element of murder perpetrated by torture is the defendant murdered the victim, with murder being defined as any killing done with express or implied malice. (See CALJIC No. 8.10 [defining murder as a killing done with malice aforethought], CALJIC No. 8.11 [defining malice as either express or implied], CALJIC 8.24 [defining the essential elements of murder perpetrated by torture].) Thus, it is possible Hicks was convicted of first degree murder based on a finding of implied malice, i.e., the killing resulted from an intentional act; the natural consequences of which were dangerous to human life; and which was deliberately performed with knowledge of the danger to, and with conscious disregard for, human life. (CALJIC No. 8.11.)

This possibility, however, does not entitle Hicks to relief under section 1172.6 for two reasons. First, implied malice murder remains a valid theory of liability notwithstanding recent changes in the law. This is because imputed malice and implied malice are distinct concepts. Implied malice is based on a defendant's own mens rea, whereas malice "imputed to a person based solely on that person's participation in a crime" is based on vicarious liability for a killing committed by another person. (§ 1172.6, subd. (a); *People v. Roldan* (2020) 56 Cal.App.5th 997,

11

1004–1005; see also *Gentile, supra*, 10 Cal.5th at p. 828.) Hicks claims that malice was "imputed" to him based on his commission of torture, but that misapprehends the distinction between implied and imputed malice. There were no other participants in Mitchell's murder, and the jury was not told it could find Hicks acted with implied malice based on his participation in some other crime. Rather, the finding of implied malice was based on the evidence Hicks was actually aware of and consciously disregarded the grave risk to life when he doused Mitchell in gasoline and set him on fire. Thus, malice was not imputed to him within the meaning of section 188. (See *People v. Roldan*, at pp. 1004–1005; see also *People v. Schell* (2022) 84 Cal.App.5th 437, 442.)

However, even if we assume Hicks was convicted of murder perpetrated by torture and the jury found he acted with implied malice, he would still not be entitled to relief because the jury also had to find Hicks acted with "a willful, deliberate, and premeditated intent to inflict extreme and prolonged pain upon a living human being for the purpose of revenge, extortion, persuasion or for any sadistic purpose." (CALJIC No. 8.24.) Our Supreme Court has held this mental state is "more than malice" as it is " 'the cold-blooded intent to inflict pain for personal gain or satisfaction,' " which is why that mens rea will support a first degree murder conviction in the absence of an intent to kill. (*People v. Brown* (2023) 14 Cal.5th 453, 464; see also *People v. Davenport* (1985) 41 Cal.3d 247, 271; *People v. Steger* (1976) 16 Cal.3d 539, 546.) Because Senate Bill 1437 sought to limit murder liability to those individuals who personally acted with malice aforethought, it does not follow that it also limited murder liability for those individuals who acted

with a more culpable state of mind.  (See *People v. Brown*, at pp. 462, 465–466 [discussing how the statute defining first degree murder perpetrated by torture has remained substantially unchanged for over a century]; *Gentile*, *supra*, 10 Cal.5th at p. 827 [explaining Senate Bill 1437's elimination of the natural and probable consequences doctrine was meant to limit murder liability to those principals who personally acted with malice aforethought].)

Hicks's second argument—that he was not the actual killer because "Mitchell did not die directly from the burn injuries"—is also not persuasive.  Indeed, the argument merely attempts to relitigate facts already decided against Hicks, specifically, the jury's conclusion Hicks murdered Mitchell by dousing him with gasoline and setting him on fire, which caused burns to Mitchell's respiratory tract, leading to his death from pneumonia.  "The mere filing of a section [1172.6] petition does not afford the petitioner a new opportunity to raise claims of trial error or attack the sufficiency of the evidence supporting the jury's findings.  To the contrary, '[n]othing in the language of section [1172.6] suggests it was intended to provide redress for allegedly erroneous prior factfinding. . . .  The purpose of section [1172.6] is to give defendants the benefit of amended sections 188 and 189 with respect to issues not previously determined, not to provide a do-over on factual disputes that have already been resolved.' " (*People v. Farfan* (2021) 71 Cal.App.5th 942, 947.)

Hicks cites to *People v. Garcia* (2020) 46 Cal.App.5th 123 (*Garcia I*), *People v. Lopez* (2022) 78 Cal.App.5th 1 (*Lopez*), and *People v. Vang* (2022) 82 Cal.App.5th 64 (*Vang*) to argue whether he was the actual killer remains disputed.

13

In *Garcia I*, *supra*, 46 Cal.App.5th 123, the defendant and his coperpetrators committed a home invasion robbery. (*Id.* at p. 129.) During the course of the robbery someone taped the victim's nose and mouth, causing him to suffocate and die. (*Id.* at p. 136.) The trial court instructed the jury with CALCRIM No. 730, requiring the prosecutor to prove defendant "did an act that caused the death of another person" during the commission of the robbery. (*Garcia I*, at p. 144.) The prosecutor argued to the jury that it could find defendant was the actual killer if it found defendant merely handed the tape, "the instrumentality of death," to a coperpetrator. (*Id.* at p. 149.)

On appeal, the defendant challenged the jury's felony murder special circumstance finding, arguing the jury could have found he was the actual killer even if he did not personally kill the victim if the jury found he committed any act in the chain of events that led to the victim's death. (*Garcia I*, *supra*, 46 Cal.App.5th at pp. 142–143.) The appellate court agreed and reversed the special circumstance finding, concluding the instructions combined with the prosecutor's argument allowed the jury to convict the defendant on an invalid legal theory, specifically, the jury could convict defendant as the actual killer even if he took no part in the taping of the victim's face. (*Ibid.*) *Garcia I* held an "actual killer" must have "personally killed" the victim, not merely " 'did an act that caused the death of another person.' " (*Id.* at pp. 151, 155.)

In *Vang*, *supra*, 82 Cal.App.5th 64, the defendant was arguing with his wife, and she fled in her car. (*Id.* at p. 69.) The defendant followed her, forced her to stop, and coerced her into his vehicle. (*Ibid.*) As the defendant drove away, his wife jumped from the moving vehicle and died. (*Ibid.*) The trial court

14

instructed the jury that the defendant was guilty of first degree felony murder and the special circumstance true if the defendant committed a kidnapping; defendant intended to commit the kidnapping; and, while committing the kidnapping, defendant caused his wife's death.  (*Ibid.*)

On appeal, defendant argued, because Senate Bill 1437 provided a defendant could only be liable for felony murder if he was the actual killer, and his wife jumped from the vehicle of her own volition, his conviction for first degree felony murder with a special circumstance rested on a legally invalid theory.  (*Vang*, *supra*, 82 Cal.App.5th at pp. 69, 80.)  The appellate court agreed, holding that, in light of Senate Bill 1437's intent to impose punishment commensurate with the person's culpability, the term "actual killer" was intended to limit liability for felony murder to the actual perpetrators of a killing, i.e., those persons who personally committed the homicidal act.  (*Vang*, at p. 88.)  The *Vang* court noted that the jury instructions had the same flaw as those in *Garcia I*.  (*Vang*, at p. 91.)  The instructions allowed the jury to find defendant guilty of felony murder if it determined that defendant "caused" the victim's death based on general causation principles, even if it did not find, beyond a reasonable doubt, that he personally committed the homicidal act.  (*Ibid.*)

In *Lopez*, *supra*, 78 Cal.App.5th 1, defendant was prosecuted solely under the theory he was the actual killer and committed the robbery alone.  The jury was not instructed on accomplice liability, aider and abettor liability, or on liability under the theory defendant counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree or robbery.  (*Id.* at

15

p. 15.)  Defendant's theory at trial was that he was neither the actual killer nor involved in the robbery.  He testified that although he went with another individual to the victim's apartment, he did not kill the victim or participate in the robbery or even enter the bedroom in which the victim was later found.  (*Id*. at p. 16.)

"The jury was instructed with CALCRIM No. 540A that to find defendant guilty of felony murder, it had to find he committed robbery and '[w]hile committing robbery, the defendant caused the death of another person.' . . .  The jury was instructed with CALCRIM No. 730 that to find the robbery-murder special-circumstance allegation to be true, the jury had to find defendant 'did an act that caused the death of another person.' . . .  On the subject of causation, the trial court instructed the jury as follows:  'An act causes death if the death is the direct, natural, and probable consequence of the act and the death would not have happened without the act.  A natural and probable consequence is one that a reasonable person would know is likely to happen if nothing unusual intervenes.' " (*Lopez*, *supra*, 78 Cal.App.5th at p. 16, italics omitted.)

The *Lopez* court found the record of conviction did not establish the defendant was ineligible for relief under section 1172.6 as a matter of law because there was a possibility he was not the actual killer.  (*Lopez*, *supra*, 78 Cal.App.5th at p. 20.)  "The jury instructions created the possibility the jury convicted defendant of felony murder and found to be true the robbery-murder special-circumstance allegation without finding him to have been the actual killer.  The jury was not instructed it had to find defendant personally killed the victim to convict him; the jury was instructed it only had to find defendant committed an

16

act that caused the victim's death.  The jury might have found defendant, though not the actual killer, participated somehow in the home invasion robbery, and the victim's death was the direct, natural, and probable consequence of an act committed in the course of his participation.  As defendant posits, 'the jury could have taken a realistic view of the prosecution's circumstantial evidence and determined beyond a reasonable doubt that [defendant] was involved in the robbery that resulted in the death, but that [defendant] may or may not have been the actual killer.' " (*Ibid.*)

*Garcia I*, *Vang*, and *Lopez* are distinguishable.  Here, there was no evidence of any other perpetrators as in *Garcia I* and *Lopez* that would allow the jury to hold Hicks vicariously liable for the acts of another.  The jury was not instructed with the felony murder rule, the natural and probable consequences doctrine, or any other form of vicarious liability.  Hicks was tried as the sole perpetrator and the actual killer.  Further, unlike *Vang*, there was no evidence of an unusual intervening cause that would call into question whether Hicks caused Mitchell's death.  Even in light of changes to the felony murder rule and natural and probable consequences doctrine, "the law is clear: '[A]s long as the jury finds that without the criminal act the death would not have occurred when it did, it need not determine which of the concurrent causes was the principal or primary cause of death.  Rather, it is required [only] that the cause was a substantial factor contributing to the result.' " (*People v. Garcia* (2022) 82 Cal.App.5th 956, 964.)

Accordingly, we find Hicks was ineligible for relief under section 1172.6 as a matter of law, and the trial court's error in failing to appoint counsel was harmless.

## II. Discovery motion

Next, Hicks argues the trial court erred when it denied his motion for postconviction discovery motion under section 1054.9. We disagree.

### A. Governing law

Section 1054.9 permits individuals convicted of a serious felony or a violent felony resulting in a sentence of 15 years or more to obtain postconviction discovery if they are pursuing a postconviction petition for writ of habeas corpus. The permitted discovery is limited to material in the possession of the prosecution or law enforcement to which defendants would have been entitled at the time of trial. (*Ibid.*; *In re Steele* (2004) 32 Cal.4th 682, 695 (*Steele*).)

To obtain the discovery under section 1054.9, a petitioner must show good faith but unsuccessful efforts to obtain the discovery from his or her trial counsel. (*Steele*, *supra*, 32 Cal.4th at p. 690.) A petitioner who can show unsuccessful efforts to obtain items from trial counsel is entitled to receive discovery materials that "either (1) the prosecution did provide at time of trial but have since become lost to the defendant; (2) the prosecution should have provided at time of trial because they came within the scope of a discovery order the trial court actually issued at that time, a statutory duty to provide discovery, or the constitutional duty to disclose exculpatory evidence; (3) the prosecution should have provided at time of trial because the defense specifically requested them at that time and was entitled to receive them; or (4) the prosecution had no obligation to provide at time of trial absent a specific defense request, but to which the defendant would have been entitled at time of trial had the defendant specifically requested them." (*Steele*, *supra*,

18

32 Cal.4th at p. 697.)  A petitioner need only demonstrate a reasonable belief that the items he requests actually exist; he need not also prove the items' materiality before being able to receive the discovery.  (*Barnett v. Superior Court* (2010) 50 Cal.4th 890, 899–901.)

We review a trial court's discovery order for abuse of discretion.  (*Jimenez v. Superior Court* (2019) 40 Cal.App.5th 824, 829–830.)  When the propriety of a discovery order turns on a question of law, we determine the issue de novo.  (*Ibid*.)

**B.    Analysis**

As an initial matter, Hicks acknowledges that the trial court's order denying his motion for postconviction discovery under section 1054.9 may only be challenged by petition for writ of mandate.  (See § 1054.9; *Steele*, *supra*, 32 Cal.4th at p. 692, fn. 2.)  Nonetheless, he asks us to exercise our discretion to treat his appeal as a petition for writ of mandate, and to reach its merits.  (See *People v. Payne* (1988) 202 Cal.App.3d 933, 936.)  In the interest of judicial economy, we will reach the merits of Hicks's appeal.  (See *Sears, Roebuck & Co. v. National Union Fire Ins. Co. of Pittsburgh* (2005) 131 Cal.App.4th 1342, 1348–1350.)

Turning to the merits, we find Hicks has not met his burden to show he made good faith efforts to obtain the materials from his trial counsel.

Hicks asserts that he made an effort to obtain the records from his trial counsel but that she merely responded that she does not have the trial transcripts.  In support of his assertion, Hicks cites to a January 29, 2021 letter from his trial counsel which reads in part:  "In response to your request, I am providing you with my State Bar number . . . .  With respect to the trial transcripts, I do not have them.  They have to be requested of the

19

court reporter who was present during the trials. Your appellate counsel will have them. I hope this satisfies your requests."

At best, this letter shows that Hicks requested the trial transcripts and nothing else. However, as summarized above, Hicks's discovery request goes far beyond trial transcripts. Indeed, to the extent the materials identified in Hicks's request even exist, they seem to encompass everything but the trial transcripts. Thus, Hicks cannot show he made a good faith effort to obtain the materials from his trial counsel.

Hicks notes that the trial court did not deny his section 1054.9 request on the grounds that he failed to show a good faith effort in obtaining the discovery materials from his trial counsel, but because his request was untimely and successive, which was improper. (See *Catlin v. Superior Court* (2011) 51 Cal.4th 300, 302 [holding a request for postconviction discovery under section 1054.9 cannot be denied as untimely].) However, even if the trial court denied his request for an improper reason, we review the trial court's ruling, not its reasoning, and we will affirm if the ruling was correct on any ground. (*People v. Brooks* (2017) 3 Cal.5th 1, 39.) Because Hicks failed to meet his burden to show he made a good faith but unsuccessful effort to obtain the requested materials from his trial counsel, which is a prerequisite under section 1054.9, the trial court properly denied the request.

## DISPOSITION

The trial court's orders are affirmed.


                             VIRAMONTES, J.


WE CONCUR:


            STRATTON, P. J.


            GRIMES, J.