Filed 9/25/23  Cherry v. Cherry CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JIMMY CHERRY, JR. et al.,<br><br>        Plaintiffs and Respondents,<br><br>v.<br><br>WINDY R. CHERRY,<br><br>        Defendant and Appellant. | A165369<br><br>(San Francisco City & County<br>Case No. CUD-21-668280 and<br>CGC-21-594979) |

At appellant Windy Cherry's request, the court stayed an unlawful detainer action against appellant pending resolution of a related matter in another proceeding.  During the pendency of the stay, the court ordered appellant to post with the court $5,000 per month, reflecting the reasonable rental value of the property at issue in the unlawful detainer; that order is the subject of this appeal.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### *The Trust*

Appellant Windy Cherry[1] is the daughter of Johnny J. Cherry and Margie Cherry (Johnny J. Cherry and Margie Cherry are collectively referred to as the Cherrys).

---

[1]    In the unlawful detainer proceeding underlying this appeal, appellant was sued as Windy R. Bryant.  In answering the complaint, she appeared as

1

On January 2, 2012, the Cherrys created The Johnny J. and Margie Cherry Revocable Trust (the Trust). The Cherrys designated themselves the Trust's initial trustees, and they designated appellant the first successor trustee upon their deaths. Appellant was also named a 50% beneficiary following the deaths of the Cherrys; her sister, Estoria Cherry, was named the other 50% beneficiary. The trust estate consisted of residential real property in San Francisco (the Property) as well as three bank accounts. The Trust gave Estoria the right to reside at the Property and the sole use of one of the bank accounts for her lifetime.

Appellant represents that she began residing in the Property around December 2017 with her father's permission.

On May 30, 2019, Margie died.

In April 2020, Johnny, the surviving spouse, amended the Trust. Under the amendment, Johnny designated respondents Delphine Cherry and Jimmy Cherry Jr. (collectively referred to as respondents) as additional co-trustees of the Trust alongside himself. Appellant was removed as the successor trustee upon her father's death, and Delphine and Jimmy were named in her place. The amendment added a gift of personal property to Jimmy ("[g]old nugget bracelet, diamond ring, and watch") and struck the gift to Estoria of residing in the Property and access to a bank account for her lifetime. In addition, under the amendment, appellant's and Estoria's beneficial inheritance shares were reduced from 50% to 10% each. The amendment split the remaining beneficial inheritance shares of the trust estate to Johnny's four grandchildren in equal shares.

---

Windy R. Cherry, noting she was erroneously sued as Windy R. Bryant. To avoid confusion, we refer to Windy as appellant and other members of the Cherry family by their first names. No disrespect is intended.

In December 2020, Johnny again significantly amended the Trust. This amendment/restatement reflected the changes that had been made in April 2020. But it also eliminated appellant's reduced 10% beneficial inheritance share in its entirety and expressly indicated that Johnny was "making no gift or provision to [his] daughter Windy R. Bryant for reasons of [his] own." The amendment/restatement directed a 10% beneficial inheritance share from the trust estate to Delphine.

On June 6, 2021, Johnny died.

On or around August 20, 2021, respondents, representing themselves as successor co-trustees of the Trust and owners of the Property, served appellant with a 30-day notice to terminate her tenancy-at-will occupancy of the Property. Appellant did not vacate within 30 days of the notice to quit and continued to occupy the Property. Three separate lawsuits followed.

*Appellant's Tort Case Against Respondents*

On September 9, 2021, appellant sued respondents as individuals and as trustees, as well as her sister, for damages in *Cherry v. Cherry et al.*, San Francisco County Superior Court Case No. CGC-21-594979 (referred to as appellant's tort case). In the lawsuit, appellant alleged respondents applied undue influence on her father to amend the Trust while his health was in rapid decline. She asserted 15 causes of action against respondents, including claims for intentional interference with expected inheritance, conversion, trespass, invasion to right of privacy, breach of fiduciary duty, and negligence.

*Appellant's Probate Case in Alameda County Superior Court*

Nearly two weeks later, on September 22, 2021, appellant filed another suit against respondents in Alameda County Superior Court, *In re Cherry Trust*, Case No. RP21113488 (referred to as the probate case). In this case,

3

appellant challenged the April 2020 and December 2020 amendments to the Trust as the product of undue influence and elder abuse, and she sought an order declaring the amendments invalid and removing respondents as co-trustees.

***Respondents' Unlawful Detainer Case Against Appellant***

On October 29, 2021, respondents, as the alleged owners of the Property, filed an unlawful detainer complaint against appellant in San Francisco County Superior Court, *Cherry v. Bryant*, Case No. CUD-21-668280 (referred to as the unlawful detainer case), to gain possession of the Property. This complaint alleged that appellant's right to occupy the Property ended with her father's death and that respondents had withdrawn any permission for her to occupy the property as of August 19, 2021.  Respondents requested damages at a rate of $167 per day beginning on August 20, 2021 and ending on the date of entry of judgment.

On November 12, 2021, appellant answered the complaint, denying respondents' contentions that they owned the property and asserting she was the proper owner as trustee of the Trust.  She maintained she continued to have the right to use and occupy the Property.  Appellant admitted that she did not pay rent to respondents but averred she had no obligation to do so.

***Motion Underlying Instant Appeal***

On November 22, 2021, in the unlawful detainer case, appellant filed a motion requesting the following: (1) an order requiring respondents to post an undertaking; (2) a stay of the unlawful detainer case; (3) a preliminary injunction; (4) reclassification of the unlawful detainer case; and (5) consolidation of the unlawful detainer case with her tort case against respondents.

4

With respect to appellant's request for a stay of the unlawful detainer case, she argued that "the furtherance of justice and due process principles require[d] a stay of this summary proceeding while the complicated issues of the parties' rights to legal and beneficial title to the [Property] are resolved in the civil action [appellant's tort case] and probate action." She added, "Once the related cases are adjudicated, this court can then rule on the parties' respective rights to possession based on the determinations made in the other actions." If the court were not inclined to stay the case, appellant requested it issue a preliminary injunction. Respondents opposed the motion. With respect to the stay request, they countered that appellant "should be required to pay funds for delay of the unlawful detainer trial" under Code of Civil Procedure section 1170.5.[2] Observing that appellant was occupying the Property as a tenant at will, they acknowledged there was no written lease agreement for her occupancy and that she paid no rent. They further stated: "She is depriving the trust owner of possession of the property and beneficiaries of their rightful inheritance. The reasonable rental rate is consistent with the value of a single-family home in San Francisco." They also noted "[i]t [was] reasonably probable that [they] will prevail in obtaining possession of the property." In her reply, appellant responded that she had not delayed the unlawful detainer trial and respondents' section 1170.5 request that she pay for the delay was frivolous.

On April 4, 2022, following a hearing, the trial court granted in part and denied in part the relief requested in the parties' various motions. The court denied the request for an undertaking but granted the request to consolidate the unlawful detainer case with appellant's tort case. Relevant to

---

[2] All further statutory references are to the Code of Civil Procedure unless otherwise stated.

5

this appeal, the court also ordered the newly consolidated matter stayed pending resolution of the probate case in Alameda County. The court further ordered: "During the pendency of the stay of the [unlawful detainer case,] moving party [appellant] shall post reasonable rental value in the amount of $5,000 a month with the Court on the first of each month . . . . ; [appellant] shall post $2,500 representing fair rental value for the 2 weeks of March 2022 no later than April 1, 2022." This appeal followed. There is no transcript of the hearing on appellant's motion in the appellate record.

DISCUSSION

## I.    Applicable Law

Our review of this appeal is governed by well settled law. "[T]he trial court's judgment is presumptively correct, such that error must be affirmatively demonstrated, and where the record is silent the reviewing court will indulge all reasonable inferences in support of the judgment. [Citations.] This means that an appellant must do more than assert error and leave it to the appellate court to search the record and the law books to test his claim." (*Yield Dynamics, Inc. v. TEA Systems Corp.* (2007) 154 Cal.App.4th 547, 556–557.) "Of course this also means that during trial, the parties must ensure that an adequate record is made of errors by which they are or may be aggrieved; ordinarily, errors not reflected in the trial record will not, and indeed cannot, sustain a reversal on appeal." (*Id.* at p. 557.) "[T]he burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609 (*Jameson*); *Ballard v. Uribe* (1986) 41 Cal.3d 564, 574 (*Ballard*) ["It is well settled, of course, that a party challenging a judgment has the burden

6

of showing reversible error by an adequate record."]; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)

"A proper record includes a reporter's transcript or a settled statement of any hearing leading to the order being challenged on appeal." (*Elena S. v. Kroutik* (2016) 247 Cal.App.4th 570, 574.) "Where the appellant fails to provide an adequate record of the challenged proceedings, we must presume that the appealed judgment or order is correct, and on that basis, affirm." (*Jade Fashion & Co., Inc. v. Harkham Industries, Inc.* (2014) 229 Cal.App.4th 635, 644; *Jameson, supra*, 5 Cal.4th at p. 609 [" 'Failure to provide an adequate record on an issue requires that the issue be resolved against [the appellant].' "]; *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295–1296.)

Section 1170.5 sets forth certain timelines for unlawful detainer trials and provisions that govern when those trial dates are extended. Section 1170.5, subdivision (a) provides that after a defendant appears under section 1170, a trial of the unlawful detainer action must be held "not later than the 20th day following the date that the request to set the time of trial is made." (§ 1170.5, subd. (a).)

Under section 1170.5, subdivision (b), "[t]he court may extend the period for trial upon the agreement of all of the parties. No other extension of the time for trial of an action under this chapter may be granted unless the court, upon its own motion or on motion of any party, holds a hearing and renders a decision thereon as specified in subdivision (c)." (§ 1170.5, subd. (b).) Section 1170.5, subdivision (c) provides: "If trial is not held within the time specified in this section, the court, upon finding that there is a reasonable probability that the plaintiff will prevail in the action, shall determine the amount of damages, if any, to be suffered by the plaintiff by reason of the extension, and shall issue an order requiring the defendant to

7

pay that amount into court as the rent would have otherwise become due and payable or into an escrow designated by the court for so long as the defendant remains in possession pending the termination of the action. [¶] The determination of the amount of the payment shall be based on the plaintiff's verified statement of the contract rent for rental payment, any verified objection thereto filed by the defendant, and the oral or demonstrative evidence presented at the hearing. The court's determination of the amount of damages shall include consideration of any evidence, presented by the parties, embracing the issue of diminution of value or any set off permitted by law." (§ 1170.5, subd. (c).)

## II. Findings under Section 1170.5, subdivision (c)

As an initial matter, appellant contends that before issuing its order for her to post $5,000 monthly as the reasonable rental value of the Property, the trial court failed to make expressly or implicitly the finding required by section 1170.5, namely, that there was a reasonable possibility that respondents would prevail in the unlawful detainer case. She further argues that the evidence she presented to the trial court established she was the one likely to prevail in the unlawful detainer case.

We cannot conclude the trial court erroneously failed to make the requisite or proper findings. As noted, a party challenging a judgment has the burden of showing reversible error by an adequate record (*Ballard*, *supra*, 41 Cal.3d at p. 574), and the party's failure to provide an adequate record requires the issue be resolved against the party (*Jameson*, *supra*, 5 Cal.4th at p. 609). Here, on March 17, 2022, there was an oral hearing of the proceeding that resulted in the order appellant is challenging. However, no reporter's transcript from that proceeding is in the appellate record. Without a reporter's transcript of the hearing or an acceptable substitute, appellant

8

cannot meet her burden of showing reversible error. In these circumstances, we cannot evaluate appellant's claim of missing findings and must indulge all inferences to support the order being reviewed and assume the trial court made all necessary findings to support its order. (*Sears, Roebuck & Co. v. National Union Fire Ins. Co. of Pittsburgh* (2005) 131 Cal.App.4th 1342, 1352, fn. 7.)[3]

We also disagree with appellant's contention that she established her likelihood of prevailing in the unlawful detainer case. This argument is premised on appellant view's that the trial court stayed the unlawful detainer case by way of granting her motion for a preliminary injunction, which would have required the court to find her likely to prevail on the merits. Again, absent a reporter's transcript of the proceeding, we are unable to evaluate the issue and must resolve it against appellant. Further, based on the trial court's written order, which is in the appellate record, it is not apparent that the court addressed appellant's request for a preliminary injunction, let alone granted it. While the court's order expressly states the "[m]otion to stay is granted," it makes no reference to any decision on a separate or distinct motion for preliminary injunction.

## III. Other Prohibitions Against the Order

Citing *Medford v. Superior Court* (1983) 140 Cal.App.3d 236 (*Medford*), disapproved on another ground in *Levine v. Pollack* (1995) 37 Cal.App.4th

---

[3] Even if appellant had included the reporter's transcript from the March 17 proceeding in the appellate record, the absence therein of any findings regarding respondents' probability of prevailing in the unlawful detainer case would likely not result in reversible error. The doctrine of implied findings, which is a "natural and logical corollary" to the principles of appellate review set forth above, "requires the appellate court to infer the trial court made all factual findings necessary to support the judgment." (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 58.)

9

129, 136–137, appellant argues that the court's order requiring her to post $5,000 monthly amounted to a prohibited prejudgment attachment[4] barred by section 483.010, subdivision (c).[5] We disagree.

In *Medford*, *supra*, 140 Cal.App.3d 236, the defendant in an unlawful detainer action filed an answer, and on October 2, five days before trial (which was set for October 7), relinquished possession of the disputed premises. (*Id.* at p. 238.) When the case came on for trial, the defendant sought and was granted a continuance to October 12 so that she could file a cross-complaint against the landlord. (*Ibid.*) On its own motion, the trial court imposed the condition that the defendant deposit $3,050 "back rent" with the court. (*Ibid.*) The sum represented $950 alleged to be due for the defendant's July rent plus $1,050 per month rent for August and September. (*Id.* at p. 238, fn. 1.) The court of appeal vacated the condition and held the trial court abused its discretion in requiring the defendant to deposit into court "the back rent and accrued damages alleged to be due the landlord as a condition of filing the cross-complaint or as a condition to continuing the trial

---

[4] According to Black's Law Dictionary, an attachment is defined as "[t]he seizing of a person's property to secure a judgment or to be sold in satisfaction of a judgment." (Black's Law Dict. (11th ed. 2019).) A prejudgment attachment is "[a]n attachment ordered before a case is decided." (*Ibid.*)

[5] Section 483.010 governs actions in which attachments are authorized. Subdivision (c) states: "If the action is against a defendant who is a natural person, an attachment may be issued only on a claim which arises out of the conduct by the defendant of a trade, business, or profession. An attachment may not be issued on a claim against a defendant who is a natural person if the claim is based on the sale or lease of property, a license to use property, the furnishing of services, or the loan of money where the property sold or leased, or licensed for use, the services furnished, or the money loaned was used by the defendant primarily for personal, family, or household purposes." (§ 483.010, subd. (c).)

date to allow time for filing and responding to the cross-complaint." (*Id.* at p. 239.) The court noted that such a requirement had the same effect as a prejudgment attachment prohibited against residential tenants by section 483.010. (*Ibid.*) The court also reasoned that a requirement for back rent and accrued damages could not be justified on the ground that it protected the landlord from delays because the tenant had surrendered possession of the property. (*Id.* at p. 240.) Nor could the payments be justified on the ground that they protected the landlord from delays flowing from the initiation of the unlawful detainer case to a cross-complaint, explaining that such back rent payments bore "no rational relation to protecting the landlord from delays incident to the filing of the cross-complaint." (*Ibid.*)

The *Medford* court further stated that its holding was supported by the recently enacted section 1170.5. (*Medford, supra*, 140 Cal.App.3d at p. 241.) The court found the public policy expressed in section 1170.5 instructive, noting the provision limited "the amount that the court can require to be deposited to *prospective damages* the landlord may suffer as the result of granting a continuance of the trial date to a tenant in possession. . . . [T]his section does not authorize the trial court to require deposit of rent or damages as a condition of granting a continuance. This evidences that the Legislature, as well as the California Supreme Court, deems landlords to be sufficiently protected from litigation delays by the deposit of future damages. Deposit of past rent or other alleged damages is neither justified nor authorized under this latest legislative enactment." (*Medford*, at p. 241, emphasis added.)

*Medford* does not aid appellant. Factually, it is distinguishable because the payments ordered there were premised on "back rent," whereas that is not the case here. The trial court's order clearly imposed on appellant the

11

$5,000 per month payment obligation "during the pendency of the stay" of the unlawful detainer case, underscoring that it was based on prospective damages tied to the future delay of the unlawful detainer proceeding resulting from appellant's requested stay. Further, the court's order aligns with the public policy behind section 1170.5, as expressed in *Medford*. If it is determined that respondents are properly co-trustees and owners of the Property, the amount ordered by the court is limited to an amount they would suffer in future damages from litigation delays in the unlawful detainer case because of the stay. It is not tied to any pre-litigation loss claimed by respondents.

Appellant also argues that section 1170.5, requiring a tenant in possession to "to pay that amount into court as the rent would have otherwise become due and payable" (§ 1170.5, subd. (c)), is inapplicable because it requires an underlying rental agreement; she also asserts fair market rent is an impermissible substitute when no such agreement exists. Appellant provides no relevant authority for her construction of section 1170.5. The case she cites, *Green v. Superior Court* (1974) 10 Cal.3d 616, was decided eight years before section 1170.5 was enacted and neither discusses nor bears on the meaning of the statute. (See generally *id.*; § 1170.5 [added by Stats.1982, ch. 1620, p. 6483, effective Jan 1, 1983].) In addition, section 1170.5, subdivision (c) authorizes the court to determine the amount of payment based on contract rent for rental payment, objections thereto, and oral or demonstrative evidence presented at the hearing. (§ 1170.5, subd. (c).) The statute expressly allows the court to consider "*any evidence*, presented by the parties, embracing the issue of diminution of value or any set off permitted by law." (*Ibid.*, emphasis added.) These broad provisions indicate that contract rent is not determinative or the sole factor in or basis for the

prospective damages calculation, nor do they suggest a prohibition against fair market rent considerations to the extent evidence of fair market rent is presented to the court.

## IV.    The $5,000 Reasonable Rent Value Calculation

Finally, appellant argues that even had the court made the requisite finding there was a reasonable probability respondents would prevail in the action, the order requiring her to pay $5,000 monthly "would have to be reversed . . . because the amount was not based on a 'verified statement of contract rent for rental payment, any verified objection thereto . . .' or any 'oral or demonstrative evidence presented at the hearing.' "  Under the authorities discussed above, without a record of what transpired at the hearing, including what evidence or arguments may have been presented there, we have no basis to evaluate appellant's factual assertions or question the trial court's determination of the payment amount and must assume it correct.

**DISPOSITION**

The order is affirmed.  The parties are to bear their own costs on appeal.

13

_____
Petrou, J.

WE CONCUR:


_____
Tucher, P.J.


_____
Fujisaki, J.

A165369/*Cherry et al., v. Cherry*

14