Filed 6/27/25  Estate of Kadle CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| Estate of ESTHER M. KADLE, Deceased. | |
| LINDSEY NADEAU et al., Petitioners and Respondents, v. MIA EHSANI, Objector and Appellant. | A171821 (Humboldt County Super. Ct. No. PR2000082) |

Mia Ehsani was appointed administrator of the estate of Esther M. Kadle and oversaw the sale of its main asset, a residence in McKinleyville. After the sale, estate beneficiaries Lindsey Nadeau, Beverly Peterson, Chelsie Hensher, Julian Marchand, and Justin Marchand filed a petition to remove Ehsani as personal representative under Probate Code[1] section 8500.[2] Petitioners alleged that Ehsani mismanaged the estate, including by allowing squatters to seriously damage the residence.  Ehsani failed to respond to petitioners' discovery requests and their subsequent discovery motions.

---

[1] All statutory references are to the Probate Code unless otherwise indicated.

[2] We use the terms administrator and personal representative interchangeably to describe Ehsani's role.  (See *Smith v. Cimmet* (2011) 199 Cal.App.4th 1381, 1391, fn. 3.)

Ultimately, the probate court granted petitioners' motion to remove Ehsani as a discovery sanction.

Ehsani appeals from this removal order. She claims she was not properly served with notice of the underlying removal petition and did not know about any of the related proceedings because her attorney, Callie R. Buck, abandoned her representation and stopped communicating with her.

We conclude that Ehsani waived any defects in service by generally appearing in the case, including a personal appearance at the hearing on the motion to remove her. We therefore affirm the removal order. We express no opinion about the impact of the probate court's other discovery orders or the scope of the issues that remain to be decided in connection with the removal petition.

## I. BACKGROUND

Esther died in 2019.[3] She was survived by three children, and the seven children of a child who predeceased her. Esther's daughters Beverly and Lisa nominated Ehsani to administer Esther's estate. Represented by Buck, Ehsani filed petitions for letters of administration. In 2020, the probate court appointed her administrator and issued letters of administration. The court did not require Ehsani to post a bond.

Nearly the entire value of Esther's estate was attributable to her residence in McKinleyville. There were squatters on the property, which Buck and counsel for Esther's son Melvin discussed with the probate court at the time Ehsani was appointed.

Unfortunately, the situation at the McKinleyville residence continued to deteriorate until Ehsani sold the property in early 2023. After the sale, Ehsani filed a petition for partial allowances of compensation, explaining that

---

[3] We refer to Esther and members of her family by their first names to avoid confusion. No disrespect is intended. (See *Askew v. Askew* (1994) 22 Cal.App.4th 942, 947, fn. 6.)

a final inventory and appraisal and final distribution to the beneficiaries remained to be completed. Esther's granddaughter Lindsey filed a declaration asking the court to deny any compensation to Ehsani and continue any further proceedings because the beneficiaries had received inaccurate and incomplete information about the estate and learned of "[u]nethical payments" to Buck's associates. The petition for partial compensation was apparently withdrawn.

In October 2023, Lindsey, Beverly, Chelsie, Julian, and Justin filed a petition under section 8500 to remove Ehsani as administrator and to surcharge her, for an accounting, and to appoint Lindsey as successor administrator. The petitioners alleged that Ehsani told Esther's beneficiaries the McKinleyville residence "had been 'boarded up' and 'secured,' when it had not." Squatters burned down the garage, which contained a rental apartment, and after the apartment's tenants left in 2021, the property "was stripped" of Esther's personal property, family heirlooms, furniture, appliances, and attachments. There was "a second fire on the property, ongoing burglary, vandalism, and two shootings, which [Ehsani] allowed to happen despite repeated warnings from the community and a neighborhood group." Ehsani failed to obtain fire insurance until after the first fire and allowed it to lapse by early 2023. Ehsani also overcharged the estate for a gate purchased from Buck's hairdresser and installed by Buck's husband.

After reviewing a draft of a final accounting prepared by Buck, the petitioners filed an amended petition to remove Ehsani. They mailed and e-mailed Buck notice of an initial status conference to be held in December 2023. Buck appeared without Ehsani and requested that a contested hearing or trial be scheduled in March 2024, which the probate court accommodated. The court scheduled a pretrial hearing early in March.

Neither Buck nor Ehsani appeared at the pretrial hearing. Buck's secretary conveyed that Buck was out of the area and would be unavailable

3

due to personal reasons for "a minimum of thirty days but possibly sixty days." Petitioners reported they had been unable to conduct discovery and asked the court to reschedule trial for June, "with discovery extended." The court vacated trial and "[a]ny prior Discovery [dead]lines" and scheduled a trial setting conference for the end of April 2024.

Buck appeared at the trial setting conference without Ehsani. Petitioners stated they were not ready for trial and requested a continuance; the court scheduled another pretrial hearing for July 2024.

Petitioners filed a motion to deem requests for admission admitted and a motion to compel responses to form interrogatories and requests for production of documents, on the ground that Ehsani had failed to respond to their discovery requests. They provided Buck with notice of both motions. Ehsani did not file an opposition to either motion, and neither she nor Buck appeared at the hearing on the first motion, which the probate court granted. Buck appeared without Ehsani at the hearing on the second motion and requested a continuance, claiming she had not been served with the moving papers. Petitioners' counsel stated that Buck was served by mail and at two e-mail addresses, and the court granted the motion.

Buck appeared at the July 2024 pretrial hearing and requested a settlement conference. The probate court scheduled one, and rescheduled trial for October 8, 2024. Meanwhile, petitioners filed a motion to compel Ehsani to appear for her deposition, which she had not attended even after it was rescheduled at Buck's request, and provided Buck with notice of that motion. The settlement conference was ultimately vacated—twice—because Ehsani did not file a settlement conference statement.

Petitioners filed a motion for "issue" and monetary sanctions on the grounds that Ehsani had failed to comply with the court's order to provide further responses to their form interrogatories and requests for production of documents; failed to respond to their requests for admission; and failed to

appear for her deposition. The motion requested that Ehsani be immediately removed as administrator and Lindsey appointed administrator in her place, and that Ehsani be ordered to surrender all property of the estate, provide an accounting, and pay a surcharge to be determined after an evidentiary hearing. Ehsani did not file an opposition.

On September 20, 2024, Ehsani and Buck appeared at the hearing on petitioners' motion to compel Ehsani's deposition and motion for issue and monetary sanctions. Buck stated there was no opposition to either motion. Ehsani said that "she filed a declaration and continuance request as she is working on retaining a substitute attorney." The probate court responded that there was "no Motion to continue before the Court" and it was "not hearing [one] this morning." The court observed that Buck remained counsel of record for Ehsani and advised Ehsani that "she needs to address her request for new counsel with . . . Buck." The court granted both of petitioners' motions.

In its written order on the motion for sanctions, the probate court granted the motion and ordered that Ehsani was removed as administrator and her powers suspended; Lindsey was appointed administrator; Ehsani was to surrender all property, money, and records of the estate to Lindsey and provide a full and final accounting; and Buck was to pay monetary sanctions to petitioners. The removal order made no mention of a surcharge, nor did it impose any issue sanctions or make any specific findings against Ehsani.

Petitioners then filed a trial brief arguing that "[b]ecause no response was ever filed to the Petition . . . and because of Court orders" imposing "both terminating sanctions and sanctions deeming requests for admission admitted, the Court should schedule this matter for a default prove-up hearing rather than for a contested evidentiary hearing." The brief indicated

5

petitioners would seek to recover at least $250,000 in damages to the estate from Ehsani.

On October 1, 2024, Attorney Bryan L. Phipps filed a notice of limited scope representation indicating that he would represent Ehsani in connection with the removal petition, "includ[ing] all pre-trial hearings, motions, discovery, trial, and post-trial motions and appeal," and would also represent her "regarding the administration of the Estate" while the petition was resolved. Petitioners filed an objection on the ground that the noticed representation encompassed the entire case, even though no substitution of attorney had been filed and Buck remained Ehsani's attorney of record. Petitioners' counsel also filed a declaration stating that Buck and Ehsani had again failed to appear for Ehsani's deposition despite the court's order compelling Ehsani's attendance.

The probate court held a trial readiness conference on October 4, 2024. Phipps appeared for Ehsani, and petitioners renewed their objection that no substitution of attorney had been filed. The parties agreed to briefly postpone the trial. Phipps then filed an ex parte application to substitute himself as Ehsani's attorney of record and continue the trial. In a supporting declaration, he explained that Ehsani had retained him on October 1. Despite several attempts—which included sending a process server to her residence—he had been unable to reach Buck to obtain Ehsani's file and procure Buck's signature on a substitution of attorney.

Ehsani also filed a declaration to support the ex parte application. She asserted that Buck had never represented her in her individual capacity, but only in her capacity as administrator. Ehsani stated that she was never served with any notice of the removal petition and Buck never told her it had been filed, did not tell her about any discovery requests, depositions, or a settlement conference, "and never informed [her] about any discovery motions or motions for sanctions." Ehsani did not say when or how she had

6

learned of these developments or explain what steps she took as administrator from the time she requested compensation in mid-2023 until she appeared at the hearing on petitioners' motions in September 2024. Ehsani declared, "Buck has abandoned my case, failed to communicate with me regarding my case, failed to provide me with copies of my client materials at my request, and is no longer responding to emails or telephone calls." She requested an order substituting Phipps as her attorney of record in her capacity as administrator and "confirming" Phipps as her attorney of record in her individual capacity, so she could "present the Court with the facts showing the actions [she] took as Administrator . . . and how those actions were reasonable and appropriate under the circumstances."

Phipps's declaration recounted that, at the trial readiness conference, he had "informed the Court of the lack of service" on Ehsani in connection with the removal petition, and "explained the need for time" to file motions "to redress the harm caused by . . . Buck and put the case 'at issue.' " Petitioners responded to this argument in a supplemental trial brief and an opposition to Ehsani's ex parte application, arguing that Ehsani had waived any objection to defects in service of the petition. They urged that Ehsani should be barred from participating in the trial because she was "prohibited from presenting *any evidence*, because she failed and refused to provide Petitioners with any evidence in response to their formal discovery before trial."

Soon after this exchange, Phipps filed a substitution of attorney executed by Buck and a notice of appeal as to the removal order. The probate court vacated trial on the removal petition and scheduled a hearing to address the status of this appeal. It appears that no further proceedings on the petition have transpired.

7

## II. DISCUSSION

Ehsani challenges the probate court's order removing her as administrator on two grounds. First, she claims the order was issued after the discovery cutoff without a required, noticed motion to reopen discovery; second, she claims she was not properly served with notice of the underlying removal petition, including a citation required by section 8500, subdivision (b).

Ehsani does not contest the probate court's authority to issue a discovery sanction removing her as administrator or claim the court's ruling was not supported by the record before it. She has forfeited any such argument. (See *Coziahr v. Otay Water Dist.* (2024) 103 Cal.App.5th 785, 799 (*Coziahr*) ["Points must be supported by reasoned argument, authority, and record citations, or may be deemed forfeited."].)

### A.    *Discovery Cutoff*

A party has a right to have discovery motions heard 15 days "before the date initially set for" trial. (Code Civ. Proc., § 2024.020, subd. (a).) "Except as provided in Section 2024.050, a continuance or postponement of the trial date does not operate to reopen discovery proceedings." (*Id.*, subd. (b).) Code of Civil Procedure section 2024.050 provides that, upon a noticed motion, "the court may grant leave to complete discovery proceedings, or to have a motion concerning discovery heard, closer to the initial trial date, or to reopen discovery after a new trial date has been set." (*Id.*, subd. (a).) "[S]uch a motion must be accompanied by a meet and confer declaration, and in exercising its discretion . . . the court must consider various factors, including . . . '[t]he necessity and the reasons for the discovery' and '[t]he diligence or lack of diligence of the [moving] party . . . , and the reasons . . . the discovery motion was not heard earlier.' " (*Pelton-Shepherd Industries, Inc. v. Delta Packaging Products, Inc.* (2008) 165 Cal.App.4th 1568, 1586–1587, fn. omitted (*Pelton-Shepherd*).)

Here, trial on the removal petition was initially scheduled for March 25, 2024. The probate court vacated that trial date and any associated discovery deadlines due to Buck's unavailability. It did not consider a noticed motion before doing so.

However, when petitioners went on to file several discovery motions after the initial trial date, Ehsani did not oppose the motions or object on the ground that the probate court's order reopening discovery was invalid. Indeed, Buck stated there was no opposition to the motion to remove Ehsani as a discovery sanction, and Ehsani herself appeared at the hearing without objecting that discovery had closed and was not properly reopened. Ehsani thus waived "her procedural objections in connection with the court's handling of the sanctions motion" and discovery cutoff. (*In re Marriage of Sahafzadeh-Taeb & Taeb* (2019) 39 Cal.App.5th 124, 147; see also *Li v. Yan* (2016) 247 Cal.App.4th 56, 65 [" ' "An appellate court will not consider procedural defects or erroneous rulings where an objection could have been, but was not, raised in the court below." ' "].)

Waiver aside, even if the probate court abused its discretion by reopening discovery without a noticed motion, we must consider whether the lack of a motion was prejudicial. (*Pelton-Shepherd, supra,* 165 Cal.App.4th at p. 1588.) "[T]he burden is on [the appellant] to demonstrate . . . 'prejudice arising from' " a trial court's error. (*Grappo v. McMills* (2017) 11 Cal.App.5th 996, 1006.) To meet this burden, the appellant must " ' "spell[] out in his brief exactly how" ' " the error caused prejudice. (*Parris J. v. Christopher U.* (2023) 96 Cal.App.5th 108, 134.)

Ehsani does not meet that burden here. Buck had asked for an initial trial date in March 2024 but failed to appear in court for the pretrial hearing, and her secretary indicated Buck would be out of the area and unavailable for 30 to 60 more days. Thus, the probate court continued trial and reopened discovery to accommodate Buck's unavailability, not because of any lack of

9

diligence by petitioners.  At the time the court did this, Buck was unavailable to meet and confer and there is no suggestion that any of the factors the court would have considered in ruling on a motion weighed against reopening discovery.[4]  Ehsani does not explain what would have been different if the court had considered petitioners' request upon a noticed motion.

Instead, Ehsani argues that she was prejudiced, not by the probate court's reopening of discovery when it vacated the initial trial date, but by its later decision to hear petitioners' motion for discovery sanctions removing her as administrator without considering a noticed motion to extend the discovery cutoff at *that* time.  According to Ehsani, by this point, there was inadequate time to hear both a motion to reopen discovery and a motion for discovery sanctions before trial.  More importantly, she retained Phipps around the same time, so a meet and confer conference might have resulted in an agreement permitting her to oppose the removal petition on its merits.

This argument focuses on the wrong timeframe and ignores that the probate court reopened discovery in March 2024, not in September when it heard the motion for discovery sanctions.  The argument assumes that if discovery had not already been reopened, petitioners would have waited until the eve of trial to seek leave to bring their motion for sanctions after the discovery cutoff.  This is not a reasonable assumption, particularly where petitioners anticipated the discovery cutoff issue and raised it with the court

---

[4] Those factors are "(1) The necessity and the reasons for the discovery[;] (2) The diligence or lack of diligence of the party seeking the discovery or the hearing of a discovery motion, and the reasons that the discovery was not completed or that the discovery motion was not heard earlier[;] (3) Any likelihood that permitting the discovery or hearing the discovery motion will prevent the case from going to trial on the date set, or otherwise interfere with the trial calendar, or result in prejudice to any other party[;] (4) The length of time that has elapsed between any date previously set, and the date presently set, for the trial of the action."  (Code Civ. Proc., § 2024.050, subd. (b).)

as soon as they learned Buck was unavailable for trial as originally scheduled. There was plenty of time between March and September of 2024 for the court to consider a noticed motion to address the discovery cutoff, while Ehsani did not retain new counsel until October. Ehsani fails to show prejudice from the procedure the court employed. (Cf. *Pelton-Shepherd*, *supra*, 165 Cal.App.4th at p. 1590 [finding prejudice where it was "reasonably probable that upon proper consideration of a motion to reopen discovery, the trial court would have determined that discovery should not be reopened simply to allow [the moving party] to belatedly pursue documents that were of little, if any, relevance to the case"].)

## B.    *Notice of Removal Petition*

Ehsani claims we must reverse the probate court's order because she was not served with proper notice of the underlying petition to remove her as administrator. Petitioners contend Ehsani waived any defect in service by generally appearing in the case, both herself and through her counsel, Buck. We agree with petitioners.

"[P]robate is an in rem proceeding in which the court supervises the administration of estate assets." (*Estate of Claeyssens* (2008) 161 Cal.App.4th 465, 472.) The court has the duty "to protect the estate and . . . its assets . . . for the beneficiaries," which includes the "responsibility to monitor" a personal representative's actions and to remove a personal representative when necessary to protect the estate. (*Estate of Ferber* (1998) 66 Cal.App.4th 244, 253; see also *Schwartz v. Labow* (2008) 164 Cal.App.4th 417, 427–428 [discussing courts' parallel authority over trustees].) Consistent with this mandate, section 8500 authorizes removal of a personal representative upon a party's petition or the court's own motion. (§ 8500, subds. (a), (b).) The court "must issue a citation to the personal representative to show cause why he or she should not be removed. (*Id.*, subd. (b).)" (*Estate of Sapp* (2019) 36 Cal.App.5th 86, 102.) It must then hear and determine the issues, and if

11

it " 'is satisfied from the evidence that the citation has been duly served and cause for removal exists, the court shall remove the personal representative from office.' (*Id.*, subd. (d).)" (*Id.* at pp. 102–103.)

Because the probate court "has jurisdiction of the rem," the citation required by section 8500 "is not jurisdictional in the same sense that a summons may be." (*Estate of Palm* (1945) 68 Cal.App.2d 204, 214.) And as with a summons, the need for a citation may be waived by a general appearance in the proceedings. (*Id.* at pp. 213–214 [lack of citation waived where administrator appeared and participated in removal proceedings]; see also *Luckey v. Superior Court* (1930) 209 Cal. 360, 371 [same].) Since "[t]he administration of an estate is an integrated proceeding," a general appearance in any aspect of the probate action may suffice. (*Horney v. Superior Court* (1948) 83 Cal.App.2d 262, 271–272 (*Horney*) [defendant who was not served with citation in will contest but appeared to request a distribution permitted only because of the contest, had generally appeared].)

Here, Ehsani generally appeared in proceedings on the removal petition, both personally and via her counsel Buck. Her own personal appearance at the hearing on petitioners' motion to remove her as a discovery sanction counts, although she appeared to request a continuance. (See *Horney, supra,* 83 Cal.App.2d at p. 271 ["Merely applying for a continuance has been held to be a general appearance"]; *City of Riverside v. Horspool* (2014) 223 Cal.App.4th 670, 679–680 ["A request for a continuance constitutes a general appearance" because it depends "on a theory that a defendant was submitting to general jurisdiction of the court"].) Her several appearances through Buck at discovery and case management proceedings associated with the petition also qualify. (See *Dial 800 v. Fesbinder* (2004) 118 Cal.App.4th 32, 52 [" 'A general appearance occurs where a party, either directly or through counsel, participates in an action in some manner which recognizes the authority of the court to proceed. It does not require any

12

formal or technical act.' "].) So might her appearances in other aspects of the probate case, although we need not decide this issue.

Ehsani's authorities are not to the contrary. *Estate of Kelley* (1898) 122 Cal. 379, 382, affirmed the probate court's removal of an executor without suspending him first, observing in dicta that removal requires a hearing and suspension does not. *Estate of Buchman* (1954) 123 Cal.App.2d 546, 560–561, held an administrator's due process rights had been violated where he was removed for being "mentally deranged," but the citation issued in connection with the removal petition only mentioned his failure to submit an inventory. Neither authority addresses the impact of an administrator's general appearance in removal proceedings in which no citation issued.

Beyond the lack of a citation, Ehsani appears to claim that section 1214 requires every "notice or other paper" in a probate case to be served on a represented party directly, in addition to service via the party's attorney of record. But that section conversely provides that notices or papers "required or permitted to be served or delivered" to a represented party must also be delivered to his or her attorney of record. Section 1214 does not itself require anything to be served on a represented party directly. Nor does it negate Ehsani's general appearances in connection with the removal petition.

Finally, Ehsani urges that she was "sued both individually and in her capacity as administrator of the Estate, but . . . Buck only represented [her] in her capacity as administrator." To the extent Ehsani claims the order removing her as administrator was entered against her in her personal capacity, she has forfeited this argument by failing to support it with reasoned argument, authority, or record citations. (See *Coziahr*, *supra*, 103 Cal.App.5th at p. 799.) We again observe that the order before us says nothing about a surcharge and makes no specific findings against Ehsani in

13

her personal capacity.  In affirming Ehsani's removal, we express no opinion on those issues.[5]

## III.  DISPOSITION

The order removing Ehsani as administrator is affirmed.  Petitioners are entitled to their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(2), (4).)


SMILEY, J.



WE CONCUR:


HUMES, P. J.

LANGHORNE WILSON, J.


A171821
*Estate of Kadle*

---

[5] Ehsani's argument suggesting that the removal order was a default judgment on the petition is similarly unsupported and inapposite.

14